# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2012-IA-01667-SCT

*IN RE: LIEN AGAINST M/Y ARETI AND M/Y
LADY LINDA: TRINITY YACHTS, LLC*

*v.*

*MIKE & JERRY'S PAINT & SUPPLY AND STATE
OF MISSISSIPPI, EX REL, ATTORNEY
GENERAL JIM HOOD*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/18/2012 |
| TRIAL JUDGE: | HON. JOHN C. GARGIULO |
| TRIAL COURT ATTORNEYS: | THOMAS E. VAUGHN |
| | ROSS D. VAUGHN |
| | THEAR JULES LEMOINE |
| | FRANK COURTENAY, JR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | THEAR JULES LEMOINE |
| | JAMES GRADY WYLY, III |
| ATTORNEYS FOR APPELLEES: | R. DOUGLAS VAUGHAN |
| | FRANCIS A. COURTENAY, JR. |
| | DOUGLAS T. MIRACLE |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | APPEAL DISMISSED - 12/11/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## CONSOLIDATED WITH

## NO. 2013-CA-01155-SCT

*IN RE: LIEN AGAINST THE M/Y ARETI AND
M/Y LADY LINDA: MIKE & JERRY'S AUTO
PARTS, INC. d/b/a MIKE & JERRY'S PAINT &
SUPPLY*

*v.*

### TRINITY YACHTS, LLC

| | |
|---|---|
| DATE OF JUDGMENT: | 06/11/2013 |
| TRIAL JUDGE: | HON. JOHN C. GARGIULO |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | R. DOUGLAS VAUGHAN |
| | FRANCIS A. COURTENAY, JR. |
| ATTORNEYS FOR APPELLEE: | THEAR JULES LEMOINE |
| | JAMES GRADY WYLY, III |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 12/11/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CHANDLER, JUSTICE, FOR THE COURT:**

¶1.   This case involves a classic contract triangle among the owner of two yachts, an independent contractor hired to paint the yachts, and an unpaid paint supplier. The owner challenged a lien the unpaid paint supplier established and enforced on two multimillion-dollar yachts under construction at the owner's Gulfport shipyard. *See* Miss. Code Ann § 85-7-31 (Rev. 2011). We affirm the trial court's grant of summary judgment in favor of the owner on a finding that privity did not exist between the owner and the unpaid paint supplier. *See Valverde v. Spottswood*, 77 Miss 912, 28 So. 720 (Miss. 1900).[1]

#### FACTS AND PROCEEDINGS BELOW

---

[1] The dissents would find that the lien statute does not require notice or privity prior to seizure of personal property. Such a construction would clearly make the statute unconstitutional, as evidenced by the strict notice requirements associated with stop-notice and mechanic's lien statutes–requirements that exist for the purpose of compensating for lack of privity.

¶2.  Shipbuilder Trinity Yachts, LLC ("Trinity") contracted with West Coast Marine ("West Coast") for West Coast to perform the paint and faring job on two multimillion-dollar yachts under construction at Trinity's shipyard in Gulfport.[2] The construction contract between Trinity and the purchasers of the yachts specified the use of the Dupont paint brand. Dupont representatives participated in writing the specifications. The construction contract also provided that Trinity would have Dupont representatives present at certain times to supervise the application of Dupont products in accordance with the specifications. West Coast ordered and received paint from Dupont paint distributor Mike & Jerry's Paint & Supply ("Mike & Jerry's"). Mike & Jerry's did not have a direct contract with Trinity to provide the paint to West Coast and did not provide the paint to West Coast pursuant to any promise from Trinity to pay Mike & Jerry's directly.

¶3.  West Coast fell behind on payments to Mike & Jerry's.[3] With $236,562.16 in outstanding invoices, Mike & Jerry's placed a lien on the two yachts under Mississippi Code Section 85-7-7. Mike & Jerry's filed the petition to establish and enforce the liens on December 2, 2011, in the Circuit Court of Harrison County. The circuit court issued a writ of seizure for the two yachts on December 12, 2011. The sheriff's department delivered the notices of seizure to the shipyard and placed them on the hulls of the yachts, but the yachts remained at all times in the possession of Trinity.[4]

---

[2] The yachts were M/Y Lady Linda, valued at approximately $42,000,000, and M/Y Areti, valued at approximately $62,000,000.

[3] This ostensibly was due to Trinity's failure to pay West Coast.

[4] Trinity continued construction and sea trials on the yachts. When the yachts were completed, Trinity deposited the amount of the liens with the Circuit Court so that it could

¶4. After the seizure of the yachts, Trinity apparently entered into an agreement to withhold from future West Coast invoices the amount of money owed Mike & Jerry's for the purpose of paying Mike & Jerry's directly so that Trinity could deliver the yachts to the purchasers free of liens. The record contains an email thread between Trinity and West Coast as well as a draft letter outlining this plan. The record also contains a subsequent letter from West Coast to Trinity rejecting Trinity's request for indemnification for the debt claimed by Mike & Jerry's. This letter states in part "[t]he entire amount of [Mike & Jerry's] outstanding invoices was in fact withheld from monies due to [West Coast] in connection with its work on the two vessels, but [Trinity] never paid these monies over to [Mike & Jerry's]. The [Mike & Jerry's] obligation is thus entirely your clients, not [West Coast's]."[5]

¶5. On August 10, 2012, Trinity filed a motion seeking to declare Mississippi Code Section 85-7-31, the enforcement statute for the lien, unconstitutional due to lack of due-process protections. On April 12, 2012, Trinity filed a motion to dismiss the petition for writ of seizure, arguing that a valid lien did not exist in favor of Mike & Jerry's because the two parties are not in privity with each other. Both motions were denied. This Court granted Trinity's interlocutory appeal regarding the constitutionality of the statutes. The State, while

---

deliver the yachts to the purchasers free of liens. Upon grant of summary judgment to Trinity, the funds were released back to Trinity in exchange for a letter of undertaking in favor of Mike & Jerry's pending the outcome of this litigation.

[5] This agreement to reduce the invoices was pursuant to the Master Service Agreement of the construction contract, which provided:
. . .
(b) In the event any liens or other Claims are filed in violation of this Section, Trinity will have the right to set off against any amounts then due and owing or which may subsequently become due and owing to Contractor.

4

taking no position on the merits of the litigation between Trinity and Mike and Jerry's, intervened as required by Mississippi Code Section 7-5-1 and authorized by Rule 24 of the Mississippi Rules of Civil Procedure. The State provided a brief presenting its position that the statute is constitutional and that Trinity had waived its right to challenge the constitutionality of the statute by relying on the statute as a defense in a motion to dismiss. In November 2012, Mike & Jerry's filed a motion for leave to file a second amended complaint in November, for the purpose of adding West Coast and causes of action to the litigation.[6]

¶6. On November 13, 2012, Trinity filed a motion for summary judgment, arguing lack of privity. The interlocutory appeal on the constitutional challenge was stayed pending the outcome of the summary judgment proceedings. The circuit court granted summary judgment to Trinity, finding that lack of privity between Trinity and Mike & Jerry's defeated Mike & Jerry's claim to establish a lien. The two cases are consolidated on appeal.

**THE TRIAL COURT CORRECTLY GRANTED SUMMARY JUDGMENT TO TRINITY YACHTS DUE TO LACK OF PRIVITY BETWEEN TRINITY AND MIKE & JERRY'S.**

¶7. This Court reviews grants of summary judgment *de novo*. This case requires this Court to interpret and apply Mississippi Code Section 85-7-7 for the first time since 1900. *Valverde v. Spottswood*, 28 So. 720 (Miss. 1900). Section 85-7-7 provides:

> There shall be a lien on all ships, steamboats and other water craft for work done or materials supplied by any person in this state for or concerning the

---

[6] Mike & Jerry's also attempted to add Trinity as a direct defendant, which was denied.

building, repairing, fitting, furnishing, supplying or victualing such ships, steamboats or other water craft, and for the wages of the persons employed on board such vessel, boat, or craft, for work done or services rendered, in preference to all other debts due and owing from the owners thereof. The said lien shall expire six (6) months after the claim is due, unless judicial proceedings have been commenced to assert it.

Miss. Code Ann. § 85-7-7 (Rev. 2011). In *Valverde*, the Court rejected a workman's attempt to place a lien on a steam tug where the vessel owner had paid an independent contractor in full to perform repairs, and that independent contractor had failed to pay the workman. *Id*. at 721. The Court held, specifically interpreting Section 85-7-7:

The sole question here is whether an independent contractor for repairs, having no connection with the vessel for navigation, and no connection as agent of the owner for any purpose, but holding an adversary relation to the owner in respect to the power of contracting debts for the repair of such vessel, has any power to create and fasten a lien upon the vessel in the process of making repairs thereon. Certainly the owner of a vessel by any contract with him would confer a lien for such work or material; and the equity of the statute would extend this lien to debts contracted by an agent of the owner, made within the scope of such agency. But the plea here avers, and the demurrer admits, that Smith, who contracted the debt sued on, was not in any sense the agent of the owner of the steamer Adelaide, in contracting such debts, but as such contractor, held a relation in respect to the owner entirely opposite, in its essential features, to that of being his agent. . . . *and not being the owner, nor the agent of the owner, his contracts gave no lien on the vessel for the debts, nor did they bind the owner therefor*.

*Valverde*, 28 So. at 721 (emphasis added). In essence, following well-established principles still in effect today, the Court held that a repairman must be in privity with the vessel's owner or such owner's agent in order to establish a lien on the vessel under Section 85-7-7, and that

6

privity of contract between the vessel owner and the workman did not exist. *Id*. Likewise, here, privity between Mike & Jerry's and Trinity does not exist.[7]

¶8.     West Coast, the entity that contracted the debt with Mike & Jerry's, was not the owner or agent of the vessel. Seizure under this lien statute was therefore not an available mechanism for relief for Mike & Jerry's. Privity cannot be created merely by an owner's knowledge or even specification of the identity of the supplier the independent contractor will use. Nor can privity be created retroactively by a subsequent promise by the owner to pay. Something more is required, and that something is simply not present in this case.

¶9.     Declining to require privity would leave us with a statute that does not require notice *or* privity prior to seizing another's property. The absence of a notice requirement prior to seizure distinguishes this statute from stop-notice or mechanic's lien statutes, and is, in essence, what makes the privity requirement constitutionally necessary. Consider how the absence of privity is compensated for by notice in the context of stop-notice and mechanic's lien statutes. *See Corrugated Indus., Inc. v. Chattanooga Glass Co.*, 317 So. 2d 43 (Miss. 1975). In fact, notice requirements are excused where the parties are in common-law privity.[8] The stop-notice and mechanic's lien statutes are designed to enable recourse where privity between the parties is lacking. But here, the water craft lien statute at hand is not so designed, but rather contemplates privity without notice. It tips to the practicalities of securing grounds

---

[7] The facts of *Valverde* are not distinguishable in any way that affects the definition and application of the doctrine of privity.

[8] *Aetna Cas. and Sur. Co. v. Buck*, 594 So. 2d 280 (Fla. 1992); *Clark Lumber Co. v. Passig*, 339 P. 2d 280, 282 (Kan. 1959); *McCleskey v. Finney*, 130 So. 2d 183, 197 (Ala. 1961).

7

for *in-rem* or *quasi-in-rem* jurisdiction. This Court got it right 114 years ago when we construed the statute–not merely the underlying facts of Spottswood's case–to require the existence of privity between the parties in order to establish a lien.[9]

¶10. The specification of Dupoint paint and Mike & Jerry's as the paint supplier in the contract between Trinity and West Coast did not establish privity between Trinity and Mike & Jerry's because it did not confer rights or impose obligations on Mike & Jerry, a party outside the contract. For example, if Mike & Jerry's had declined to do business with West Coast, Trinity would not have privity on the grounds of that contract to sue Mike & Jerry's for failing to fulfill the specifications of Trinity's contract with West Coast.

¶11. Mike & Jerry's further argues that a lien arose in its favor against Trinity when Trinity withheld payments due West Coast for the purpose of paying Mike & Jerry's directly. "But privity with the owner, within the meaning of the lien statute, exists only when the creditor, in furnishing the materials or performing the labor, has acted on the owner's obligation, express or implied, to pay therefor as a primary debtor." ***Harper Lumber & Mfg. Co. v. Teate***, 125 So. 21, 23 (Fla. 1929). Trinity entered into the purported agreement to reduce future West Coast invoices *after* Mike & Jerry's provided the supplies to West Coast. "A subsequent promise by the owner to pay for materials previously furnished to the contractor, and upon the contractor's credit, cannot operate retroactively to create between the owner

---

[9] We reject the dissent's suggestion that Mike & Jerry's petition be considered under the stop-notice statute. Not only did Mike & Jerry's fail to assert a lien under that statute; that statute has been repealed following the Fifth Circuit's determination that it was unconstitutional. *See* ***Noatex v. King Const. of Houston, L.L.C.***, 732 F.3d 479, 485-486 (5th Cir. 2013).

8

and materialman a state of privity which did not exist at the time the materials were furnished." *Id*. at 24. The amendment to the Master Service Agreement between Trinity and Mike & Jerry's did not operate retroactively to create privity between Trinity and Mike & Jerry's sufficient to create a lien in Mike & Jerry's favor.

¶12.    Mike & Jerry's argues that this case is factually distinct from *Valverde* in that, in *Valverde*, the owner had fully paid the independent contractor, while, here, Trinity allegedly had not paid West Coast the money West Coast would have used to pay its debt to Mike & Jerry's. But this factual distinction does not eliminate or satisfy the privity requirement. Regardless of the state of invoices between Mike & Jerry's and West Coast and West Coast and Trinity, the direct relationship between Mike & Jerry's and Trinity is still lacking.

¶13.    The dissent argues that the Agreed Orders that dismissed the liens and ordered that the amount in controversy be paid into the court's registry permitted Mike & Jerry's to assert claims to the money beyond their original lien claim. We cannot agree. The trial court's order extinguishing the liens with prejudice was not intended to, nor did it have the effect of, converting the cause of action to a general claim against the money by any interested party after notice. In fact, it is illogical that Trinity would have voluntarily subjected itself to claims outside Mike & Jerry's petition. In the Agreed Orders, the trial court ordered "any claim, right, action, or lien Mike & Jerry's may have to or against [the vessels] dismissed with prejudice, the same [claim, right, action or lien] being allowed to continue, *in rem*, against [the money] deposited with the Registry of the Court." Because the trial court ordered the extant causes of action to continue, and merely substituted the *in rem* object of the claim, the subject matter of Mike & Jerry's claims was not altered. Rather, the effect of

9

extinguishing the liens on the yachts was to enable the delivery of the yachts to the ultimate purchasers free from Mike & Jerry's claim on the physical vessel.

¶14. All parties intended that ultimate disposition of the money (now represented by a letter of undertaking) was entirely contingent on the merits of the lien and seizure that originated the action. This is evidenced by Trinity's challenge to the lien and seizure via a Summary Judgment Motion *after* the yachts were freed for delivery. With respect to the dissent's position, a holding that the agreed orders transformed the cause of action into claims outside the petition would raise serious due-process concerns. Under the trial court's order, and by mutual consent of the parties, the money represents, and is contingent upon, the merits of Mike & Jerry's seizure of the yachts under the lien statute.[1]

¶15. Finally, we reject the dissent's position that unjust enrichment is a valid ground for relief against Trinity. Mike & Jerry's never asserted an unjust-enrichment claim. We observe that the underlying litigation is currently active against the party who contracted the debt with Mike & Jerry's–West Coast–and that West Coast has legal mechanisms available to hold Trinity accountable for any unpaid debts as the litigation unfolds.

¶16. Trinity argues that, as applied in this case, Section 85-7-31 is unconstitutional. But because Mike & Jerry's has no lien, we see no need to discuss that issue in this case.

**CONCLUSION**

¶17. Unfortunately, Mississippi's Water Craft Seizure Act was not the appropriate legal

---

[1] The fact that the agreed orders allowed the suit to continue against money paid into the court's registry while dismissing the liens so that the yachts could be delivered parallels the procedure in Section 85-7-47. That statute permits a defendant, whose property has been seized under Section 85-7-31, to give a bond and replevy the seized property, with the bond to be awarded to the person "in whose favor judgment may be given in the case."

10

mechanism for Mike & Jerry's to recover the debt it is due. Mike & Jerry's was not in privity with the owner of the yachts at the time it provided West Coast, an independent contractor, the paint and faring supplies. The trial court appropriately granted summary judgment to Trinity on the grounds brought forward in this particular appeal. Our opinion is not a comment on the ultimate responsibility of parties to make right their debts. We affirm the trial court's grant of summary judgment. We dismiss the interlocutory appeal challenging the constitutionality of the lien-enforcement statute.

¶18.   **AFFIRMED.**

**WALLER, C.J., KITCHENS, PIERCE AND KING, JJ., CONCUR. DICKINSON, P.J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY CHANDLER AND PIERCE, JJ.; WALLER, C.J., JOINS IN PART. RANDOLPH, P.J. DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY COLEMAN, J.; LAMAR, J., JOINS IN PART. COLEMAN, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, P.J., AND LAMAR, J.**

**DICKINSON, PRESIDING JUSTICE, CONCURRING:**

¶19.   I agree with Justice Chandler's opinion, but I write separately to explain my disagreement with Justice Coleman's view that the language of Section 85-7-7 requires a lien in favor of Mike & Jerry's.  The beginning sentence of the statute reads:

> There shall be a lien on all ships, steamboats and other water craft ***for work done or materials supplied by any person in this state*** for or concerning the building, repairing . . . such ships . . . .[2]

¶20.   First, Mike & Jerry's is not a "person in this state;" it is a paint business located in Jefferson, Louisiana.  Thus, a "plain reading" of the statute precludes the lien in favor of Mike & Jerry's.

---

[2] Miss. Code Ann. § 85-7-7 (Rev. 2011).

¶21.    Second, there was no "work done or materials supplied" to the vessels by Mike &

Jerry's.  The record clearly demonstrates that Mike & Jerry's sold the paint to West Coast

Marine in Seattle, Washington, which in turn, furnished the paint to the vessels.[3]  Were we

to interpret the language "supplied by any person in this state for or concerning materials"

to reach beyond the person who actually provided the materials *to the vessel*, and apply it to

every entity in the chain of distribution of those materials, liens would be created in favor of

the landowner who supplied the oil that went into the paint; to DuPont, which manufactured

the paint; to Mike & Jerry's, which bought it from DuPont and sold it to West Coast, and to

West Coast, which actually supplied it to the vessel.  Justice Coleman's interpretation of the

lien statute—that it protects anyone who sold any material concerning the vessel, with no

requirement that it be sold to the vessel or its owner—would reach even the manufacturer of

a screwdriver that sold it to a hardware store, that sold it to an employee of a subcontractor.

¶22.    Section 85-7-7 was not written to reach so far as Justice Coleman suggests, as

evidenced by *Valverde v. Spottswood*,[4] in which this Court, more than a hundred years ago,

held that liens created by the statute are created only in favor of those in contractual

relationships with the owner which, in this case, is Trinity.  Mike & Jerry's had no contract

with Trinity; nor did Mike & Jerry's ever supply any paint to Trinity.  Mike & Jerry's sold

paint to West Coast Marine.

---

[3] Contrary to Justice Randolph's assertion that this statement has no basis, Mike & Jerry's sworn affidavit makes no claim that it supplied paint to Trinity.  Rather, Mike & Jerry's supplied paint to West Coast, which, in turn supplied the paint to the vessels in Harrison County.  The fact that the paint was delivered to West Coast (not Trinity) in Harrison County is insignificant.

[4] *Valverde v. Spottswood*, 77 Miss. 912, 28 So. 720 (1900).

**CHANDLER AND PIERCE, JJ., JOIN THIS OPINION.  WALLER, C.J., JOINS THIS OPINION IN PART.**

Exhibit A



MIKE & JERRY'S PAINT & SUPPLY - 1
(504)736-9004 * (504)736-9008 Fax
828 CENTRAL AVENUE
JEFFERSON, LA 70121

**Statement**
Printed: 11/9/2011

**Salesman:**
NO SALESMAN

**Customer:** WEST COAST MARINE - 6916
2122 W. ELMORE ST
SEATTLE, WA 98199

**Terms:**
Net 30 Days

Phone: (206)763-6916   Fax: (206)767-4306

| Trans ID | Check/PO No. | Trans Type | Trans Date | Date Due | Amount | Balance |
|---|---|---|---|---|---|---|
| 342977 | | INVOICE | 05/24/2011 | 06/10/2011 | $1,602.18 | $1,602.18 |
| 343371 | brian | INVOICE | 05/27/2011 | 06/10/2011 | $1,887.20 | $1,887.20 |
| 343386 | T050 | INVOICE | 05/27/2011 | 06/10/2011 | $9,275.59 | $9,275.59 |
| 343884 | | INVOICE | 05/31/2011 | 06/10/2011 | $2,346.00 | $2,346.00 |
| 343970 | T050 | INVOICE | 06/01/2011 | 07/10/2011 | $2,883.10 | $2,883.10 |
| 344293 | | INVOICE | 06/03/2011 | 07/10/2011 | $1,388.90 | $1,388.90 |
| 344676 | | INVOICE | 06/08/2011 | 07/10/2011 | $8,086.18 | $8,086.18 |
| 344911 | | INVOICE | 06/09/2011 | 07/10/2011 | $2,608.99 | $2,608.99 |
| 344980 | | CREDIT | 06/10/2011 | 07/10/2011 | $-50.10 | $-50.10 |
| 344991 | | INVOICE | 06/10/2011 | 07/10/2011 | $116.00 | $116.00 |
| 345489 | T050 | INVOICE | 06/15/2011 | 07/10/2011 | $1,878.54 | $1,878.54 |
| 345768 | | INVOICE | 06/17/2011 | 07/10/2011 | $9,410.13 | $9,410.13 |
| 345925 | T043 | INVOICE | 06/20/2011 | 07/10/2011 | $2,894.82 | $2,894.82 |
| 345929 | | INVOICE | 06/20/2011 | 07/10/2011 | $429.20 | $429.20 |
| 346047 | T050 | INVOICE | 06/21/2011 | 07/10/2011 | $4,017.46 | $4,017.46 |
| 346348 | T050 | INVOICE | 06/23/2011 | 07/10/2011 | $2,304.00 | $2,304.00 |
| 346813 | T050 | INVOICE | 06/28/2011 | 07/10/2011 | $8,146.72 | $8,146.72 |
| 346949 | T050 | INVOICE | 06/29/2011 | 07/10/2011 | $10,683.67 | $10,683.67 |
| 347248 | | INVOICE | 07/01/2011 | 08/10/2011 | $2,216.47 | $2,216.47 |
| 347506 | | INVOICE | 07/06/2011 | 08/10/2011 | $1,805.22 | $1,805.22 |
| 347584 | | INVOICE | 07/06/2011 | 08/10/2011 | $589.00 | $589.00 |
| 347791 | | INVOICE | 07/08/2011 | 08/10/2011 | $1,417.87 | $1,417.87 |
| 348631 | T050 | INVOICE | 07/15/2011 | 08/10/2011 | $1,011.81 | $1,011.81 |
| 348644 | | INVOICE | 07/15/2011 | 08/10/2011 | $7,522.14 | $7,522.14 |
| 349183 | | INVOICE | 07/21/2011 | 08/10/2011 | $1,644.53 | $1,644.53 |
| 349837 | | INVOICE | 07/28/2011 | 08/10/2011 | $12,952.81 | $12,952.81 |
| 349965 | | INVOICE | 07/29/2011 | 08/10/2011 | $732.41 | $732.41 |

Totals for Ship To WEST COAST MARINE - 6916:  $236,563.16



EXHIBIT
1

Balance for WEST COAST MARINE - 6916:  $236,341.01

| Future | Current | 1 - 30 Days | 31 - 60 Days | 61 - 90 Days | 90+ Days | Amount Due |
|---|---|---|---|---|---|---|
| $ 0.00 | $ 0.00 | -$222.15 | $ 0.00 | $ 0.00 | $ 236,563.16 | $ 236,341.01 |

Page 1 of 1

MIKE & JERRY'S PAINT & SUPPLY - 1
(504)736-9004 * (504)736-9008 Fax
828 CENTRAL AVENUE
JEFFERSON, LA 70121



**Statement**
Printed: 11/9/2011

**Salesman:**
NO SALESMAN

**Customer:** WEST COAST MARINE - 6916
2122 W. ELMORE ST
SEATTLE, WA 98199

**Terms:**
Net 30 Days

Phone: (206)763-6916   Fax: (206)767-4306

| Trans ID | Check/PO No. | Trans Type | Trans Date | Date Due | Amount | Balance |
|---|---|---|---|---|---|---|
| **PAYMENTS** | | | | | | |
| 358741 | 7178 | PAYMENT | 10/24/2011 | | $-1,708.92 | $-222.15 |
| **OPEN TRANSACTIONS** | | | | | | |
| Shipped To: WEST COAST MARINE - 6916, 2122 W. ELMORE ST , SEATTLE, WA 98199 | | | | | | |
| 325689 | T043 | INVOICE | 12/17/2010 | 01/10/2011 | $9,984.10 | $9,984.10 |
| 332507 | T050 | INVOICE | 02/22/2011 | 03/10/2011 | $7,966.09 | $7,966.09 |
| 332671 | T043 | INVOICE | 02/23/2011 | 03/10/2011 | $3,179.51 | $3,179.51 |
| 333215 | T050 | INVOICE | 02/28/2011 | 03/10/2011 | $8,666.65 | $8,666.65 |
| 334152 | T050 | INVOICE | 03/09/2011 | 04/10/2011 | $8,733.52 | $8,733.52 |
| 335225 | | INVOICE | 03/14/2011 | 04/10/2011 | $303.58 | $303.58 |
| 335330 | T050/T043 | INVOICE | 03/15/2011 | 04/10/2011 | $9,209.90 | $9,209.90 |
| 336102 | T050 | INVOICE | 03/22/2011 | 04/10/2011 | $7,834.26 | $7,834.26 |
| 336125 | T050 | INVOICE | 03/22/2011 | 04/10/2011 | $172.00 | $172.00 |
| 336656 | T050 | INVOICE | 03/28/2011 | 04/10/2011 | $7,799.52 | $7,799.52 |
| 336990 | BRIAN | INVOICE | 03/30/2011 | 04/10/2011 | $291.84 | $291.84 |
| 337542 | T050 | INVOICE | 04/05/2011 | 05/10/2011 | $7,419.30 | $7,419.30 |
| 337556 | T050 | INVOICE | 04/05/2011 | 05/10/2011 | $215.18 | $215.18 |
| 337590 | | INVOICE | 04/05/2011 | 05/10/2011 | $438.80 | $438.80 |
| 337900 | T050 | INVOICE | 04/07/2011 | 05/10/2011 | $10,200.55 | $10,200.55 |
| 338391 | T050 | INVOICE | 04/12/2011 | 05/10/2011 | $199.44 | $199.44 |
| 338509 | TO43 | INVOICE | 04/13/2011 | 05/10/2011 | $4,768.78 | $4,768.78 |
| 339171 | T043 | INVOICE | 04/19/2011 | 05/10/2011 | $5,055.67 | $5,055.67 |
| 339406 | | INVOICE | 04/20/2011 | 05/10/2011 | $1,054.56 | $1,054.56 |
| 339697 | t043 | INVOICE | 04/22/2011 | 05/10/2011 | $2,257.38 | $2,257.38 |
| 340109 | T043/T050 | INVOICE | 04/27/2011 | 05/10/2011 | $9,770.06 | $9,770.06 |
| 340764 | | INVOICE | 05/04/2011 | 06/10/2011 | $1,578.23 | $1,578.23 |
| 340765 | | INVOICE | 05/04/2011 | 06/10/2011 | $4,221.07 | $4,221.07 |
| 340794 | | INVOICE | 05/04/2011 | 06/10/2011 | $121.85 | $121.85 |
| 341111 | | INVOICE | 05/06/2011 | 06/10/2011 | $2,101.23 | $2,101.23 |
| 341318 | | INVOICE | 05/09/2011 | 06/10/2011 | $237.35 | $237.35 |
| 341410 | | INVOICE | 05/10/2011 | 06/10/2011 | $8,932.77 | $8,932.77 |
| 341805 | | INVOICE | 05/12/2011 | 06/10/2011 | $424.66 | $424.66 |
| 341896 | | INVOICE | 05/13/2011 | 06/10/2011 | $206.69 | $206.69 |
| 342071 | | INVOICE | 05/16/2011 | 06/10/2011 | $3,059.17 | $3,059.17 |
| 342346 | T050 | INVOICE | 05/18/2011 | 06/10/2011 | $9,455.48 | $9,455.48 |
| 342616 | | INVOICE | 05/19/2011 | 06/10/2011 | $1,083.97 | $1,083.97 |
| 342639 | | CREDIT | 05/19/2011 | 06/10/2011 | $-352.84 | $-352.84 |
| 342752 | | INVOICE | 05/20/2011 | 06/10/2011 | $172.00 | $172.00 |

Page 1 of 1

Case: 24CI1:11-cv-00356   Document #: 1   Filed: 12/02/2011   Page 6 of 12

25

15

**RANDOLPH, PRESIDING JUSTICE, DISSENTING:**

¶23. Four glaring errors were committed by the trial court in granting summary judgment in favor of Trinity and denying Mike & Jerry's motion to amend its complaint to add Trinity as a defendant. The trial court failed to distinguish the present case from *Valverde v. Spottswood*, 77 Miss. 912, 28 So. 720, 721 (1900). The facts presented in *Valverde* are so markedly distinguishable as to provide no support for Trinity's argument, the trial court's grant of summary judgment, or the majority's affirmance. Second, Section 85-7-7 of the Mississippi Code[5] does not require that there be a contract or privity to establish or enforce a lien. The plain language of the statute provides a *mandatory lien* for any person who performs work on or supplies material to a water craft. Third, the trial court ignored its own May 4, 2012, Agreed Order which released and dismissed Mike & Jerry's liens on the two yachts, placing in their stead an amount of money equal to Mike & Jerry's claim. The suit then became one to obtain a judgment against the money deposited by Trinity into the court's registry. When the lien statutes are read together, as written, it is clear that Mike & Jerry's is entitled to pursue its claim for judgment. Finally, based on the contracts involved in this dispute, Trinity assumed the contractual obligation to pay Mike & Jerry's when it withheld money due and owing to West Coast. Trinity has never paid Mike & Jerry's or West Coast for the paint used on the two yachts and, thus, was unjustly enriched. Each error will be

---

[5]"There shall be a lien on all ships, steamboats and other water craft for work done or materials supplied by any person in this state for or concerning the building, repairing, fitting, furnishing, supplying or victualing such ships, steamboats or other water craft, and for the wages of the persons employed on board such vessel, boat, or craft, for work done or services rendered, in preference to all other debts due and owing from the owners thereof. The said lien shall expire six (6) months after the claim is due, unless judicial proceedings have been commenced to assert it." Miss. Code Ann. § 85-7-7 (Rev. 2011).

16

discussed more fully below. A fuller recitation of the facts and procedural history assists in this analysis.

**A. Factual Background and Procedural History**

¶24. Trinity contracted with Douglas von Allmen to build a custom, 183-foot, tri-deck motor-yacht[6] with a price tag of $42,000,000, and with Areti, Ltd., to complete construction[7] of another yacht,[8] 197 feet, 11 inches long, with a price tag of $62,000,000. The contracts specified that the paint would be supplied by Mike & Jerry's, an authorized DuPont jobber[9] for the New Orleans/Mississippi Gulf Coast marketplace, and applied by West Coast. Not only was the specific brand of marine finishes (DuPont) specified, but the distributor (Mike & Jerry's) was specified as well.

¶25. Pursuant to the contract for M/Y Areti (Hull No. T043), *Trinity was responsible* for *furnishing all materials* and constructing and *painting the yacht*. Attached to that contract was another contract entitled **MASTER SERVICE AGREEMENT (MSA)**, which reads in pertinent part:

> The Contractor [West Coast] agrees to pay promptly, and to see that any sub-contractor pays promptly, all bills for labor, material, or other Work in furtherance of the Agreement and to permit no liens of any kind to be fixed upon or against the property of the Company [Trinity] or any third party because of or arising out of the Work.

---

[6] Also referred to as Hull No. T050, M/Y Lady Linda.

[7] Trinity warranted that the yacht was approximately seventy percent complete.

[8] Also referred to as Hull No. T043, M/Y Areti.

[9] DuPont does not sell paint directly to builders, but instead uses distributors (jobbers), such as Mike & Jerry's.

Also attached to the contract was a **NO LIEN CERTIFICATE** which required that *all invoices for materials* furnished to Trinity for the building of the yacht *be paid prior to the date of delivery*, such that there would be no encumbrances on the vessel.

¶26.  Pursuant to the agreement between Douglas Von Allmen and Trinity for the construction of M/Y My Lady Linda (Hull No. T050), *Trinity agreed to furnish* all labor and *materials required* to complete the yacht in accordance with the *plans and specifications*. The agreement also provided that a "no-lien" affidavit be delivered on completion of the yacht, stating that "*all invoices for materials*, equipment and supplies *furnished by the Builder [Trinity] to the Yacht* have been *paid in full* and that all laborers, craftsmen, and subcontractors . . . have been paid in full. . . ." Attached to this agreement was a similar MSA, which, in pertinent part, reads:

> The Contractor agrees to pay promptly, and to see that any Sub-Contractor pays promptly, all bills for labor, material, or other Work in furtherance of the Agreement and to permit no liens of any kind to be fixed upon or against the property of the Company or any third party because of or arising out of the Work.

¶27.  West Coast was selected by Trinity to apply the marine finishes, per the specifications, to the yachts. Pursuant to the MSA between Trinity and West Coast, Trinity *contractually had* the *authority* to *withhold funds* to pay Mike & Jerry's *if West Coast failed to pay*. *Ultimately, Trinity withheld funds* from West Coast equal to Mike & Jerry's claims and *later paid the claimed amount into the court's registry*.

¶28.  Other than Trinity's selection of West Coast to apply the marine finishes, DuPont controlled all aspects of painting the yachts – from the distributor supplying the marine finishes to the minute details of painting the yachts. DuPont submitted more than thirty pages

18

of specifications for paint and fairings to Trinity. Page twenty-one of the specifications identified not only the business entities, but also the persons by name and position – *specifying Mike & Jerry's and its principal, Glen Bohte, as the distributor*, along with six of DuPont's advisory representatives who were to be on site from start to finish.

¶29.     On December 2, 2011, Mike & Jerry's filed its Petition to Establish and Enforce Water Craft Liens, setting forth its claims that it was owed $236,341.01[10] for products it supplied[11] to paint the yachts when they were under construction and owned by Trinity.[12] On December 8, 2011, it filed a motion for writ of seizure,[13] requesting that the sheriff seize the two yachts.

_____

[10] Mike & Jerry's supplied $236,562.16 in paint. It was paid only $221.15 of its bill.

[11] Justice Dickinson's separate opinion states "there was no 'work done or materials supplied' to the vessels by Mike & Jerry's." (Dickinson Opinion at ¶21). There is no basis for this statement in the record. Mike & Jerry's testified by sworn affidavit that it supplied paint to West Coast *in Harrison County*. Additionally, Justice Dickinson is seeking to further expand Section 85-7-7 by stating that the statute calls for materials to be provided directly "to the vessel." Once again, there is no basis for this argument. The statute specifically states that "[t]here shall be a lien on all ships, steamboats and other water craft for work done or materials supplied by any person in this state *for or concerning the building, repairing, fitting, furnishing, supplying or victualing* such ships, steamboats or other water craft. . . ." Miss. Code Ann. § 85-7-7 (Rev. 2011) (emphasis added).

[12] Trinity was the builder/owner of the vessels until title passed to the purchase/ owners. Ownership of the yachts did not pass to the purchasers/owners until construction of the yachts was substantially completed, sea trials were successfully completed, and title passed upon the receipt of the final payment.

[13] The majority conflates the concepts of lien law and seizure law. Lien law does not require that notice be given prior to attaching a lien. The actual lien is the notice. However, seizure law does require that notice be given to the owner of the property prior to seizing the property. *See **Miss. Power Co. v. Goudy***, 459 So. 2d 257, 282 (Miss. 1984) ("In a replevin case, . . . the debtor has sufficient rights in the property that due process requires reasonable advance notice and opportunity to be heard prior to seizure.") (citing ***Fuentes v. Shevin***, 407 U.S. 67, 92 S. Ct. 1983, 32 L. Ed. 2d 556 (1972)). *See* Maj. Op. at ¶1, n.1, ¶3, ¶15. One only has to look at Paragraph 3 of the majority's opinion, where it recognizes that notice prior to the seizure was in effect. Notice has nothing to do with privity. The absence of notice does

19

On December 12, 2011, the court issued the Writ of Seizure, and a hearing was set for December 15, 2011. A copy of the writ was attached to each vessel, but the summons could not be served on a person, as the owner of Trinity was out of the country and had directed that no Trinity employee accept service of the summons.

¶30. Once Trinity had knowledge of Mike & Jerry's unpaid claim, Trinity and West Coast began negotiations for Trinity to withhold money it owed West Coast and Trinity would pay Mike & Jerry's directly. Trinity withheld an amount from West Coast equal to its debt due West Coast in the amount of Mike & Jerry's claim, yet it failed to pay the withheld money to Mike & Jerry's. Ultimately, Trinity paid neither West Coast nor Mike & Jerry's for the paint, despite the purchasers/owners having paid for the yachts painted per the specifications and plans.

¶31. No appearance was made directly on behalf of the yachts or purchasers/owners. It was not until April 12, 2012, that Trinity made an appearance by filing a motion to dismiss Mike & Jerry's petition. Trinity claimed *Valverde* prevented Mike & Jerry's from establishing liens and contested the constitutionality of the lien statute. Trinity also asserted, *inter alia*, in its Motion to Dismiss, that the rights of unpaid suppliers were limited to Mississippi Code Section 85-7-181 and that Mike & Jerry's did not comply with the statute's requirements. This motion was denied by the trial court. On the same day, Trinity filed an Emergency Motion for Expedited Hearing, alleging that one of its yachts was scheduled for delivery to the purchasers/owner on or about April 25, 2012.

---

not exist in this case. The majority further states that the privity requirement is "constitutionally necessary." Maj. Op. at ¶9. This statement is made without authority or citation.

¶32.  On May 4, 2012, on the joint *ore tenus* motion of Trinity and Mike & Jerry's, the court entered an Agreed Order dismissing with prejudice "any claim, right, action, or lien Mike & Jerry's may have to or against Hull T043," but allowing Mike & Jerry's to continue its proceeding against $136,971.67, which was deposited by Trinity into the registry of the court. The court made the following findings: (1) Hull T043 was scheduled for delivery at a uncertain date in the near future; (2) Trinity had moved to dismiss the action (which the Court denied), to extinguish the liens (the Agreed Order extinguished the lien), and to recover the seized property (the Agreed Order allowed Trinity to recover Hull T043); (3) the parties agreed to "substitute any claim, right, action, or lien Mike & Jerry's may have to or against Hull T043, replacing in its stead the sum of . . . $136,971.67, to be paid by Trinity Yachts . . . and paid into the Registry of the Court;" and, of great import; (4) Mike & Jerry's agreed to release "any claim, right, action, or lien" it may have had against Hull T043. Thus, Mike & Jerry's was allowed to preserve its right to pursue its remedy against the money placed in the court registry to "be tried as other cases in the court," after giving notice to all interested parties.[14] *See* Miss. Code Ann. §§ 85-7-31[15] and 85-7-49.[16] On May 7, 2012, Trinity paid the

---

[14] Trinity already had notice of the claim, and the Court subsequently allowed West Coast to be added as an interested party.

[15] "A person having any lien in Sections 85-7-1 through 85-7-9 may enforce the same by making affidavit before any officer authorized to administer oaths of any county where the subject matter of the lien may be, describing therein the property sought to be subjected, setting forth his claim, share or interest therein, and asserting his lien thereon, with an itemized account of his demand, and giving the names of the persons interested therein, and of those, if any, who have a like or other claim or interest in such property; whereupon the clerk or justice shall issue a writ directed to the proper officer and returnable to the proper court, commanding the officer to seize the property, or so much thereof as may be necessary to satisfy the plaintiff's demand and costs, and to summon the persons named in the affidavit as interested therein, to appear in the court designated, at the time fixed, to answer the

21

sum into the registry of the court. On June 4, 2012, Trinity paid an additional $149,663.43 into the registry of the court for Hull T050.[17] Although Trinity paid these amounts into the registry of the court, it, in fact, already had withheld the monies from West Coast once it was made aware of the disputed claims.

¶33. Although the liens against the vessels had been released by Mike & Jerry's and dismissed with prejudice by the court, Trinity then filed a Motion for Summary Judgment on November 13, 2012, arguing that, because no privity or contractual relationship existed between Trinity and Mike & Jerry's, the vessels had been improperly seized, and the liens asserted by Mike & Jerry's were not proper, *ergo*, Mike & Jerry's was not entitled to recover the money or maintain an action against Trinity. Mike & Jerry's subsequently filed a Motion for Leave to File a Second Amended Complaint, adding both Trinity and West Coast as defendants to its suit.

¶34. The trial court heard arguments on both motions. During the hearing, the trial court stated that, "I find that the statute [85-7-7] per se does not require the privity of contract

complaint." Miss. Code Ann. § 85-7-31 (Rev. 2011).

[16]"Any person interested may contest the demand of the plaintiff . . . by filing a statement in writing, under oath, of his defense or claim, itemizing his account, if any he has; *and the case shall be then at issue between the parties, and shall be tried as other cases in the court.* And the judgment of the court shall be framed so as to adjust the rights of the several parties as to the subject matter of the suit; and judgment may be given against the party liable thereto for any amount, and for the sale of any goods in the hands of the officer, and for any balance not obtained from the sale of the goods, to be made by execution as in other cases, and the costs may be adjudged as the court may consider just; and as many judgments shall be rendered as may be necessary to adjust the rights of the several parties." Miss. Code Ann. § 85-7-49 (Rev. 2011) (emphasis added).

[17] The June 4, 2012, Agreed Order was not made part of the record on appeal.

between the parties. Seeing no contractual relationship and the . . . nonexistence of an agency relationship, the motion for summary judgment is granted." On June 11, 2013, the trial court denied Mike & Jerry's motion to add Trinity as a defendant "on the grounds of futility, because no contract or privity existed between Mike & Jerry's and Trinity, nor did Mike & Jerry's properly perfect a lien or claim under Mississippi's 'Stop Notice' statute, Miss. Code Ann. § 85-7-181, and consequently Mike & Jerry's cannot assert a viable claim against Trinity. . . ." The trial court granted Trinity's Motion for Summary Judgment and ordered that Trinity's "security"[18] placed into the court's registry be returned.[19]

## B. Discussion of Errors

### 1. *Valverde v. Spottswood*

¶35.    Trinity argued, and the trial court agreed, that the ruling of *Valverde* held that a lien could not be created against the vessel or the owner by an independent contractor. After a thorough review of the *Valverde* record, it is clear that *Valverde* is so markedly distinguishable from the present case that it provides no support to Trinity's argument that Mike & Jerry's should not be allowed to pursue its claim for the marine finishes demanded by the purchasers/owners and builder/owner, which were supplied to and applied to the yachts at Trinity's behest. *Valverde* does not require a separate contract or privity with the owner to perfect a lien. The word "privity" is not found in the text of the *Valverde* opinion.

---

[18] The trial court's use of the term "security" is misplaced. Mike & Jerry's agreed with Trinity's substitution of the money in the stead of the liens on the vessels and gave up its right to pursue "any, claim, right, action, or lien" against the vessels in exchange for the right to proceed on its claims against the substituted property, i.e., the money.

[19] The trial court did properly grant Mike & Jerry's motion to amend its complaint to add West Coast as a defendant.

¶36. In *Valverde*, the owner of the vessel (Spottswood) contracted with George Smith (contractor) to repair his steamer. *Valverde*, 28 So. at 721. Smith, in turn, hired several laborers to perform repair work on the vessel and asked Valverde to supply groceries to the vessel during the time the workers repaired the steamer. Spottswood (owner) and Smith (contractor) agreed upon a price for such repairs. Spottswood already had paid Smith the agreed-upon price in full, absent knowledge of the disputed claims. *Id.* Smith, however, did not pay Valverde the entire amounts owed for the victuals or the laborers. At the time of Spottswood's payment to Smith, Spottswood was wholly unaware of Valverde's claim for supplies and the laborers' claim for work performed, as those claims were made subsequent to Spottswood's payment to Smith. *Id.*

¶37. Valverde filed a declaration on March 17, 1898, asserting that, from March 23, 1897, until May 1, 1897, he had sold Smith various and sundry groceries, for which he had not received full payment.[20] Valverde also asserted in his declaration that he had been assigned seven separate claims by laborers who had performed work on the vessel but were not paid in full for their labor. The total amount unpaid was approximately $210.[21] On the same day,

---

[20] The case did not address that Valverde's declaration was untimely filed, as it was more than six months after the payment was due. *See* Miss. Code Ann. § 85-7-7.

[21] There is a discrepancy in the record as to whether the amount owed was $209.50 or $210.15.

a writ of seizure was filed against the vessel, authorizing the sheriff to seize the vessel.[22] The vessel was returned after Spottswood paid a bond in the amount of $419.50.

¶38.   On April 25, 1898, Spottswood filed a "Special Plea," stating that (1) he had contracted with Smith to repair his vessel, (2) the agreed-upon sum of $1,051 was paid in full (unlike today's case), (3) Smith had no interest in his vessel (unlike builder/owner Trinity), and (4) the contract price was paid long before he knew Smith was incurring debts without his knowledge or approval (unlike today's case). On April 28, 1898, Valverde demurred Spottswood's Special Plea, stating that Spottswood presented no defense and Spottswood's payment to Smith did not operate to discharge the lien. The court overruled the demurrer, and, after Valverde declined to reply or plead further, dismissed the case. Valverde timely appealed.

¶39.   On appeal, the Court held that Smith was not the agent or owner of the steamer (as was builder owner Trinity) and Smith's contracts could not bind the owner. *Valverde*, 28 So. at 721. Valverde and "his assignors knew, or ought to have known, that they were not dealing with the owner of the steamer, or with his agent, and they had no reason to believe that Smith carried with him authority to contract for the owner; (neither of which applies to today's case, for Mike & Jerry's and DuPont knew Trinity was the owner, and that either Trinity or its paint contractor had authority to procure paint to fulfill Trinity's contractual obligation, *see FSC Sec. Corp. v. McCormack*, 630 So. 2d 979, 988 (Miss. 1994) (holding that an agent is one

---

[22] Although the record is unclear about certain dates, it is clear that the vessel was seized only after (1) all the work had been performed, (2) groceries had been delivered by Valverde, and (3) the ship had left and later returned to Mississippi. In the present case, the lien was filed while the yachts were still under construction at the builder/owner's (Trinity's) yard.

who acts under either the express or apparent authority of a principal) and the consequences of their negligence must be borne by them (no issue of negligence was alleged in today's case))." *Id.* The Court affirmed the judgment of the circuit court. *Id.* The *Valverde* Court held that, as the facts were presented in that particular case and in the absence of other relevant factors, no lien could be had by the grocer on that particular vessel. The facts of the present case are so dissimilar as to make *Valverde* inapplicable.

¶40.    Spottswood exercised no control over the labor or materials used in the ship's repair. Trinity did as builder/owner. The *Valverde* Court noted that the owner did not order the specific material that was used to repair his steamer. *Valverde*, 28 So. at 721. Conversely, in the present case, both the builder/owner (Trinity) and the purchasers/owners specifically required that DuPont marine finishes be acquired from Mike & Jerry's and used on the yachts. Trinity was  contractually obligated to paint the yachts using DuPont paint distributed by Mike & Jerry's. Spottswood already had paid Smith the full amount owed for the repairs, without the knowledge that his contractor, Smith, had not yet paid his grocer for  supplies or laborers for their work. There was no other "debt due and owing from the owner" to perfect a lien against the vessel. *See* Miss. Code Ann. § 85-7-7. In today's case, there was money "due and owing from the owner [Trinity]," as Trinity had not paid, and still has not paid, West Coast or Mike & Jerry's the amount owed and withheld by Trinity for the marine finishes. Trinity was aware of Mike & Jerry's claim while West Coast was still applying the finishes to the yachts and withheld money it owed to West Coast equal to the claimed amount. In the present case, Mike & Jerry's timely asserted a claim against the vessels, pursuant to Section 85-7-7.

¶41.    Trinity argues that *Valverde* is the only case addressing the application of Section 85-7-7. However, the case of ***Kornosky v. Hoyle***, 97 Miss. 562, 52 So. 481, 481 (1910), is instructive, as it also involves the owner of the vessel, as does the present case. In ***Kornosky***, Hoyle filed a replevin suit against Kornosky (owner) for the balance owing Hoyle for repairs made to Kornosky's boat. *Id.* After Kornosky refused to pay Hoyle the amount owed, Hoyle sued out a writ of replevin for the boat. *Id.* That Court stated that

> [t]he court below held that chapter 85, Code of 1906, [now 85-7-7] *which gives a lien, and a remedy therefor*, on watercraft for work done or materials supplied in building, repairing, and furnishing the same, was appellant's only remedy for the collection of the amount due him by appellee. In so holding the court erred. At common law the appellant had a possessory lien for work done and materials furnished in repairing the boat, carrying with it the right to hold the same against the owner until his charges were paid.

*Id.* That Court held that there is "a lien at common law for the building of a ship, if the shipwright has not parted with the possession thereof, . . . without paying all that is due for her construction." *Id.* (quoting 19 A. & E. Encyc. Law 1090 (2d ed.)). Chapter 85 of the 1906 Code, like its counterpart Section 85-7-7, "does not abrogate the common-law right. On the other hand, its purpose is to enlarge the same, and give a better remedy, though not exclusive."   The Court held that Hoyle was entitled to one of two remedies: (1) he was entitled to judgment against the owner (Kornosky) for the return of the boat (this is not sought in this case), or (2) he was entitled to the amount of his indebtedness (which is exactly what Mike & Jerry's presently seeks). Applying the ***Kornosky*** reasoning, which is more akin to this case than *Valverde*, this Court should find that Mike & Jerry's is entitled to pursue its claim with notice to all interested parties.

### 2. Mississippi Code Section 85-7-7

27

¶42.    Section 85-7-7 of the Mississippi Code reads in pertinent part that "[t]here shall be a lien on all . . . water craft for work done or materials supplied . . . for or concerning the building . . . in preference to all other debts due and owing from the owners. . . ." Miss. Code Ann. § 85-7-7 (Rev. 2011). The statute does not include a privity-of-contract requirement. By its plain language, Section 85-7-7 applies to "any person in" Mississippi who worked on or supplied materials to the vessels. "The lien statutes of Mississippi afford an abundance of protection for mechanics and materialmen. But in all cases such persons must take action as a condition precedent to receiving the benefits thereof, and upon their failure so to do their remedies are those of common creditors." *Wortman & Mann, Inc. v. Frierson Bldg. Supply Co.*, 184 So. 2d 857, 860 (Miss. 1966) (quoting *Jones Supply Company v. Ishee*, 249 Miss. 515, 521-22, 163 So. 2d 470, 472 (1964)). Mike & Jerry's timely asserted liens, pursuant to Section 85-7-7, for the paint it supplied for the two luxury yachts under construction by Trinity.

¶43.    While we can agree that there was no contract between Trinity and Mike & Jerry's, the contract documents provided for Mike & Jerry's to supply paint for the yachts. Additionally, Section 85-7-7 does not require a direct contract or privity for a lien to be asserted. The trial court noted as such in his bench opinion – "I find that the statute per se does not require the privity of contract between the parties." However, the trial court misstepped when he held, "[s]eeing no contractual relationship and the . . . nonexistence of an agency relationship, the motion for summary judgment is granted."

¶44.    A lien is an assertion of claims to all interested persons to ensure money is not paid before the claim is resolved and seeks to create a preference to all other debts "due and

28

owing." The purpose of Section 85-7-7 is to offer protection to laborers, materialmen, and suppliers, a good number of whom would not know whether privy was an outhouse or the sharing of knowledge, nor would they know the difference between privateer and pirate, nor do they have a Philadelphia lawyer (Pennsylvania or Neshoba County practitioner) at their beck and call, nor do they carry around contracts to be signed by owners when delivering materials to a job site.

¶45. No requirement of privity is mentioned in Section 85-7-7, *Valverde*, or *Kornosky*, although the majority uses the word "privity" multiple times in its opinion. After adopting such a requirement and amending the statute, why does the majority fail to consider the alternative argument advanced by Trinity and Mike & Jerry's? Trinity argued that Mike & Jerry's improperly filed its action asserting Section 85-7-7 when it should have filed pursuant to Section 85-7-181.[23] Section 85-7-7 is not the exclusive remedy for Mike & Jerry's. Mike & Jerry's can seek relief under either Section 85-7-7 or Section 85-7-181. Although I would find that Mike & Jerry's was entitled to pursue its claim via Section 85-7-7, in the alternative, Mike & Jerry's was equally entitled to pursue its claim under Section 85-7-181. The trial court improperly held that Mike & Jerry's did not provide notice to Trinity in accordance with that section. Filing a lien pursuant to Section 85-7-7 provides more than sufficient notice to Trinity regarding its claim. Sections 85-7-7 and 85-7-181 were designed to protect materialmen and to ensure that they would be paid for products sold. They are for the benefit of materialmen, and every materialman does not have to carry a book of contracts for the owners' execution

---

[23] This section was repealed on April 11, 2014. However, at the time this litigation commenced, this applicable statute was in effect and its constitutionality is not the subject of the appeal in this case.

29

every time he delivers a two-by-four, can of paint, or plumbing fixture to a project. Mike & Jerry's is such a materialman.

### 3. May 4, 2012, Agreed Order

¶46.    As stated above, Mike & Jerry's properly filed its petition pursuant to Mississippi Code Section 85-7-7, asserting liens in preference of any other interested party. *See* Miss. Code Ann. § 85-7-31. The central issue was whether Mike & Jerry's, or any other interested party, was entitled to the remedies provided under Mississippi Code Section 85-7-49.

¶47.    At the conclusion of the hearing on Trinity's motion for summary judgment and Mike & Jerry's motion to amend its complaint, there were no liens on either vessel, for Mike & Jerry's had released those liens and the trial court had dismissed the liens against the vessels with prejudice. Trinity should have been judicially estopped from being heard on a motion concerning liens that already had been released and dismissed. The trial court conflated the issues of validity of a lien *vel non* with whether Mike & Jerry's demand for monetary judgment was valid. Perhaps this explains the flawed reasoning behind the trial court's Order and Final Judgment entered on June 11, 2013, when the trial court denied Mike & Jerry's motion to add Trinity as a defendant.

¶48.    The liens against the vessels were released by agreement of the parties and order of the court. Upon release of the liens, neither the constitutionality of the water craft seizure statute nor the validity of the liens was to be adjudicated.[24] The actions against the vessels were

---

[24] Therefore, it is not necessary to address the constitutionality of the Water Craft Seizure Act.

30

dismissed with prejudice.[25] The "subject-matter of the suit" had changed from asserting liens and obtaining a monetary judgment, to only obtaining a remedy, i.e., a monetary judgment.[26] Mike & Jerry's remaining claim was against the money Trinity withheld from West Coast and paid into the court.

¶49.    In one fell swoop, the trial court dismissed Trinity, **an interested party**, and gave Trinity the money deposited into the court, contrary to its earlier order which allowed for Mike & Jerry's to proceed on its claims against the money after releasing its liens and claims against the vessels. The trial court's order foreclosed Mike & Jerry's opportunity, and that of another interested party (West Coast), to present their claims and/or defenses to the money in the registry of the court. Although the liens were dismissed with prejudice, the money substituted therefore was still at issue and was improperly released by the trial court.[27] Again, the trial court conflated two issues. Whether there is a right to assert a lien does not control whether there is a valid claim.

### 4. Contractual Obligation

---

[25] Trinity concedes as much, for when it made an appearance as an interested party, it responded to Mike & Jerry's petition "pursuant to Section 85-7-49 of the Mississippi Code, and contested the demand of . . . Mike & Jerry's. . . ."

[26] The majority states that the disposition of the money was "entirely contingent" on the merits of the lien and seizure. Maj. Op. at ¶14. However, once the liens were released and dismissed, the disposition of the money was contingent on the merits of Mike & Jerry's claim for a monetary judgment.

[27] Trinity understood that it might have continued exposure based on the outcome of a trial and submitted a letter of undertaking in favor of Mike & Jerry's pending the outcome of this litigation.

31

¶50. Finally, Mike & Jerry's argued that Trinity had a contractual obligation to pay West Coast per their agreement. Trinity, in fact, withheld money it owed to West Coast for the very paint at issue. Trinity never paid West Coast the total amount it owed it, and Trinity refused to pay Mike & Jerry's the money withheld. In fact, Trinity failed to disclose that fact to Mike & Jerry's or the court until late in the proceedings.

¶51. Pursuant to the MSA prepared and signed by Trinity, Trinity assumed the obligation to pay Mike & Jerry's when it withheld the money it owed to West Coast once it learned that Mike & Jerry's had not been paid the full amount for the finishing products. The MSA specifically provided Trinity with "the right to set off against any amounts" owing to West Coast if "any liens or other claims are filed" based on West Coast not paying Mike & Jerry's or any other contractor. This contractual right of set-off was exercised by Trinity for Mike & Jerry's benefit.

### C. Conclusion

¶52. Based on these facts and analogous lien statutes, I cannot agree that summary judgment was properly granted in favor of Trinity. Although Trinity had been paid, it pocketed the disputed amount, leaving both West Coast, and the supplier, Mike & Jerry's, upaid.

¶53. The trial court improperly held that a contract or privity between the parties must exist in order for a Section 85-7-7 lien to be created. Our statutes provide for no such requirement. Mike & Jerry's should be allowed to pursue recovery "against all interested parties" for the amount owed for the materials. I submit that summary judgment was not properly granted in favor of Trinity, for the reasons stated herein. Accordingly, I dissent.

¶54. The proper disposition would be to reverse the trial court's denial of Mike & Jerry's motion to add Trinity as a party and the grant of summary judgment in favor of Trinity. This case should be remanded for proceedings consistent with this opinion, allowing all interested parties (Trinity, Mike & Jerry's, and West Coast) an opportunity to put forth proof or contest any demands thereof, regarding whether they are entitled to all or any portion of the disputed amount. The question for the trial court to decide is which interested party is entitled to judgment.

**COLEMAN, J., JOINS THIS OPINION. LAMAR, J., JOINS THIS OPINION IN PART.**

**COLEMAN, JUSTICE, DISSENTING:**

¶55. Today's majority opinion presents an excellent and, I believe, accurate discussion of the law of Mississippi regarding privity and the necessity of privity in most lien situations. However, I am of the opinion that, in requiring privity for a lien pursuant to Mississippi Code Section 85-7-7 the majority exceeds the constitutional power of the Court by judicially amending the statute.

¶56. Section 85-7-7 provides as follows:

> *There shall be a lien* on all ships, steamboats and other water craft for work done or materials supplied by any person in this state for or concerning the building, repairing, fitting, furnishing, supplying or victualing such ships, steamboats or other water craft, and for the wages of the persons employed on board such vessel, boat, or craft, for work done or services rendered, in preference to all other debts due and owing from the owners thereof. The said lien shall expire six (6) months after the claim is due, unless judicial proceedings have been commenced to assert it.

Miss. Code Ann. § 85-7-7 (Rev. 2011) (emphasis added). The use of the word shall indicates that the Legislature has issued a mandatory directive that the courts of the state, including the

Supreme Court, have no choice but to follow. *Pickering v. Hood*, 95 So. 3d 611, 615 (¶ 10) (Miss. 2012) ("The statute's mandatory term "shall" is not a suggestion – it is a mandate."). Accordingly, a Section 85-7-7 lien exists automatically and by operation of law when a person supplies materials or work for a ship, steamboat, or other water craft. Assuming the statute violates no constitutional provision, the Legislature had the authority to enact it and the Court must enforce it. Once the lien exists, it stands in preference to all other debts due and owing from the owners.

¶57.    Our role in the constitutional framework of our state government "should not place [the Court] in the position of changing the substantive law enacted by the Legislature." *Little v. Miss. Dep't of Transp.*, 129 So. 3d 132, 138 (¶ 12) (Miss. 2013) (citing *Stockstill v. State*, 854 So. 2d 1017, 1022-23 (¶ 13) (Miss. 2003) ("It is not the duty of this Court to add language where we see fit.")). Stated differently, we have a "constitutional mandate to faithfully apply the provisions of constitutionally enacted legislation." *Tallahatchie Gen. Hosp. v. Howe*, 49 So. 3d 86, 92 (¶ 17) (Miss. 2010). The Legislature "alone has the power to create *and modify* statutes. It is not the province of the Court to insert requirements where the Legislature did not do so." *Finn v. State*, 978 So. 2d 1270, 1272-1273 (¶ 9) (Miss. 2008) (emphasis added); *see also Zambroni v. State*, 64 So. 2d 335, 337 (1953) ("It is not our province to write the statutes, but only to construe them as written.").

¶58.    I cannot square the majority's imposition of a requirement of privity with the plain language of the statute, which creates a mandatory and automatic lien. Because I believe the majority exceeds the constitutional power of the Court in judicially modifying the statute, I must dissent.

**RANDOLPH, P.J., AND LAMAR, J., JOIN THIS OPINION.**