### BENJAMIN D. VALVERDE *v.* CHASE SPOTTSWOOD.

LIENS. *Water craft. Debts of contractor. Agency. Code* 1892, §§ 2725, 2726.

Debts for materials, supplies and labor created in the performance of a contract to repair a ship are not liens on the vessel, under code 1892, §§ 2725, 2726, when the same were created by an independent contractor who was in no sense the agent of the shipowner.

FROM the circuit court of Jackson county.

HON. THADDEUS A. WOOD, Judge.

The appellant, Valverde, was plaintiff, and the appellee, Spottswood, defendant, in the court below. The facts are stated in the opinion of the court.

*J. I. Ford,* for appellant.

The question raised by the demurrer is whether the payment by the owner of a ship to the contractor employed to repair her, without notice of the claims of material men or laborers, will discharge the lien given by § 2725 of the annotated code, or whether this statute confers a lien on the laborer and material men only, which an owner must look out for in settlement with his contractor, or must show in excuse of nonpayment to the laborer that the laborer did the work on the credit of the contractor, and not on the faith that the vessel was liable for the debt.

The most casual examination of this water craft lien law will disclose that its provisions are entirely different and independent of the mechanics' lien law.

The lien given mechanics under ch. 77 of the code is given in express terms to the contractor (see § 2699) or person employed by the owner, or with whom the owner contracted for materials, and imposes upon any person employed by the con-

tractor, or selling material to the contractor, to give a written notice to the owner before he settles with the contractor, and binds only the sum remaining in his hands at the time such notice is served, whereas the lien conferred by § 2725 runs directly to the person furnishing the material or employing the laborer. Not one word is said in this statute about innocent purchasers, or people asserting such claims, being required to bring notice to the owner before he settles with his contractor, but the lien operates on the vessel in preference to all other debts due and owing from the owners. And as this court has held in the case of *Archibald* v. *Citizens' Bank,* 64 Miss., 523, it is wholly distinct from the mechanics' lien law, and can be enforced even against an innocent purchaser without notice. Under the admiralty law there was no lien in the home port of the vessel, i. e., any port in the state in which the owner resides (see the *Lattawana,* 21 Wallace, U. S., 594; also, the *Cumberland,* 30 Fed. Rep., 451), for repairs or supplies furnished a vessel, the presumption being that anything supplied a vessel in her home port is supplied on the personal credit of her owners. And statutes like § 2725 of our code have been adopted by all the states for the purpose of putting all creditors of vessels, whether in the home port or a foreign port, on the same footing. And in applying this statute to the various cases that arise, the state courts should adopt the same rules that obtain in the admiralty courts. It is an unquestioned principle of the admiralty law, that where the owners of a vessel either make a conditional sale of her and turn her over to the contingent purchaser, or charter her to a third party and surrender possession of the vessel to the charterer, and such purchaser, charterer or other person, standing in a similar relation to the owner, carries her into a foreign port and incurs debt in supplying or repairing the vessel, the vessel is liable for the repairs either under the state statute or general admiralty law, even though the charterer or purchaser is under contract with the owner to pay all debts made by him,

and in such case the owner can only defeat the lien by showing that the material men or laborers supplied the material or did the work on the personal credit of the charterer, or special owner, and with a knowledge of the nature of the arrangement between the owner and such charterer or special owner.

*J. H. Neville* and *White & Harper,* for appellees.

This court is for the first time called upon to construe a statute, which is independent of all other statutes, giving a lien on water craft, found in ch. 81 of the code of 1892. The question in this case, we contend, is of first impression in this court because it seeks to subject a water craft to the supposed lien of a party who has never made a contract with the owner of the vessel, when such services and material furnished have been given without the consent and knowledge of the owner of the vessel.

The decision in *Archibald* v. *Citizens' Bank,* 64 Miss., 523, is binding and operative in all cases where the lien has been given by the contract with the owner of the vessel, and becomes fixed before the sale of it, even in the hands of a *bona fide* purchaser without notice of the lien; but this decision nowhere claims that a lien can be fixed in favor of a laborer on the water craft, where that laborer has not been engaged or employed by the owner of the vessel or his agent. Indeed, there is no lien whatever on the water craft, given by this statute in favor of any laborer who renders such work at his own instance, or even at the instance of a stranger, without the consent and knowledge of the owner; and the one question is whether in this case the laborers had any lien taxed on the water craft by reason of their work done upon it, and whether the material man had a lien on the water craft by reason of supplies furnished, when the laborers were employed by the contractor and the supplies furnished to him, without the knowledge and consent of the owner of the vessel.

If the money had been paid into court and a contest had been

inaugurated between the laborers and the contractor as to whom the money belonged, then the question would not have been a very difficult one.   As was decided under a similar statute in the mechanics' lien law, laborers and material men can only reach the money due from the employer to the contractor when the owner is in default.   This is in accordance with the exact wording of the statute when it says: " It shall be a lien in preference to all other debts due and owing from the owners thereof."   They have a right to subject the money in the hands of the employer to the payment of their debt, but there is no lien given them by statute against the owner's consent and without his knowledge, and any construction made under the statute known as the " mechanics' lien law," which is confined alone to this identical or similar clause, will apply with all force to the present law under consideration.   Those decisions rendered on this special clause, and construed with reference to the other clause in the mechanics' lien law, cannot be called in support or aid of the proper construction to be given to this statute, which is independent, unless the decision is based entirely upon the first clause of the statute.   *Herrin* v. *Warren,* 61 Miss., 509; *Archibald* v. *Citizens' Bank,* 64 Miss., 523.

It will not be presumed that the legislature intends to take the property of another without his consent, or to fix a lien upon the same, without his knowledge, by implication merely, but it must be done by express enactment, and that within the limits of the constitution.

TERRAL, J., delivered the opinion of the court.

The plaintiff, Valverde, being the owner in his own right and by transfer of claims aggregating about $210 for supplies furnished and for work done in repair of the steam tug Adelaide, brought suit against the defendant, Spottswood, the owner of said steamer, to recover said amount and to enforce a lien on said vessel for said sum.

The declaration alleged that George Smith, as the agent and

servant of the owner of the vessel, had contracted said debts, and that thereby a lien on the vessel had accrued to the plaintiff.

Spottswood pleaded to the declaration that George Smith had contracted with him as the owner of the steamer to repair the same for the sum of $1,051; that Smith as such contractor, and not as the agent or servant of Spottswood, had contracted the debts sued for; and that defendant had paid Smith said sum of $1,051 before he had any notice of any debts being owing to plaintiff or to his assignors by Smith. The plaintiff demurred to said plea; his demurrer was overruled, and, declining to plead further, a verdict and judgment passed against him; and from the judgment he appeals.

Ch. 81, annotated code, gives a lien for material supplied and for work done for the repair, etc., of any steamboat in preference to all other debts due and owing from the owners thereof.

The sole question here is whether an independent contractor for repairs, having no connection with the vessel for navigation and no connection as agent of the owner for any purpose, but holding an adversary relation to the owner in respect to the power of contracting debts for the repair of such vessel, has any power to create and fasten a lien upon the vessel in the process of making repairs thereon.

Certainly the owner of a vessel by any contract with him would confer a lien for such work or material; and the equity of the statute would extend this lien to debts contracted by any agent of the owner made within the scope of such agency. But the plea here avers, and the demurrer admits, that Smith, who contracted the debts sued on, was not in any sense the agent of the owner of the steamer Adelaide in contracting such debts, but as such contractor held a relation in respect to the owner entirely opposite, in its essential features, to that of being his agent.

For many purposes the shipmaster may bind the vessel for debts contracted by him; and an agent of the owner in any case within the scope of his agency might also bind the vessel for such debts.

In *The Valencia,* 165 U. S., 264, it was held that a charterer of a vessel did not carry with him as charterer a right to bind the vessel for supplies, etc.

But here Smith was in no sense the agent of the owner of the steamer in the contraction of said debts; and not being the owner nor the agent of the owner, his contracts gave no lien on the vessel for the debts, nor did they bind the owner therefor.

As was said in *The Valencia,* above cited, the plaintiff and his assignors knew, or ought to have known, that they were not dealing with the owner of the steamer or with his agent, and they had no reason to believe that Smith carried with him authority to contract for the owner, and the consequences of their negligence must be borne by them.

*The judgment of the circuit court is affirmed.*