CHANDLER, Justice,
for the Court:
¶ 1. This case involves a classic contract triangle among the owner of two yachts, an independent contractor hired to paint the yachts, and an unpaid paint supplier. The owner challenged a lien the unpaid paint supplier established and enforced on two multimillion-dollar yachts under construction at the owner’s Gulfport shipyard. See Miss.Code Ann § 85-7-31 (Rev. 2011). We affirm the trial court’s grant of summary judgment in favor of the owner on a finding that privity did not exist between the owner and the unpaid paint supplier. See Valverde v. Spottswood, 77 Miss. 912, 28 So. 720 (Miss.1900).[1]
FACTS AND PROCEEDINGS BELOW
¶ 2. Shipbuilder Trinity Yachts, LLC (“Trinity”) contracted with West Coast Marine (“West Coast”) for West Coast to perform the paint and faring job on two multimillion-dollar yachts under construction at Trinity’s shipyard in Gulfport.[2] The construction contract between Trinity and the purchasers of the yachts specified the use of the DuPont paint brand. DuPont representatives participated in writing the specifications. The construction contract also provided that Trinity would have DuPont representatives present at certain times to supervise the application of DuPont products in accordance with the specifications. West Coast ordered and received paint from DuPont paint distributor Mike & Jerry’s Paint & Supply (“Mike & Jerry’s”). Mike & Jerry’s did not have a direct contract with Trinity to provide the paint to West Coast and did not provide the paint to West Coast pursuant to any promise from Trinity to pay Mike & Jerry’s directly.
¶ 3. West Coast fell behind on pay *288 ments to Mike & Jerry’s.[3] With $236,562.16 in outstanding invoices, Mike & Jerry’s placed a lien on the two yachts under Mississippi Code Section 85-7-7. Mike & Jerry’s filed the petition to establish and enforce the liens on December 2, 2011, in the Circuit Court of Harrison County. The circuit court issued a writ of seizure for the two yachts on December 12, 2011. The sheriffs department delivered the notices of seizure to the shipyard and placed them on the hulls of the yachts, but the yachts remained at all times in the possession of Trinity.[4]
¶4. After the seizure of the yachts, Trinity apparently entered into an agreement to withhold from future West Coast invoices the amount of money owed Mike & Jerry’s for the purpose of paying Mike & Jerry’s directly so that Trinity could deliver the yachts to the purchasers free of liens. The record contains an email thread between Trinity and West Coast as well as a draft letter outlining this plan. The record also contains a subsequent letter from West Coast to Trinity rejecting Trinity’s request for indemnification for the debt claimed by Mike & Jerry’s. This letter states in part “[t]he entire amount of [Mike & Jerry’s] outstanding invoices was in fact withheld from monies due to [West Coast] in connection with its work on the two vessels, but [Trinity] never paid these monies over to [Mike & Jerry’s]. The [Mike & Jerry’s] obligation is thus entirely your clients, not [West Coast’s].”[5]
¶ 5. On August 10, 2012, Trinity filed a motion seeking to declare Mississippi Code Section 85-7-31, the enforcement statute for the lien, unconstitutional due to lack of due-process protections. On April 12, 2012, Trinity filed a motion to dismiss the petition for writ of seizure, arguing that a valid lien did not exist in favor of Mike & Jerry’s because the two parties are not in privity with each other. Both motions were denied. This Court granted Trinity’s interlocutory appeal regarding the constitutionality of the statutes. The State, while taking no position on the merits of the litigation between Trinity and Mike and Jerry’s, intervened as required by Mississippi Code Section 7-5-1 and authorized by Rule 24 of the Mississippi Rules of Civil Procedure. The State provided a brief presenting its position that the statute is constitutional and that Trinity had waived its right to challenge the constitutionality of the statute by relying on the statute as a defense in a motion to dismiss. In November' 2012, Mike & Jerry’s filed a motion for leave to file a second amended complaint in November, for the purpose of adding West Coast and causes of action to the litigation.[6]
¶6. On November 13, 2012, Trinity filed a motion for summary judgment, arguing lack of privity. The interlocutory appeal on the constitutional challenge was *289 stayed pending the outcome of the summary judgment proceedings. The circuit court granted summary judgment to Trinity, finding that lack of privity between Trinity and Mike & Jerry’s defeated Mike & Jerry’s claim to establish a lien. The two cases are consolidated on appeal.
THE TRIAL COURT CORRECTLY GRANTED SUMMARY JUDGMENT TO TRINITY YACHTS DUE TO LACK OF PRIVITY BETWEEN TRINITY AND MIKE & JERRY’S.
¶7. This Court reviews grants of summary judgment de novo. This case requires this Court to interpret and apply Mississippi Code Section 85-7-7 for the first time since 1900. Valverde v. Spottswood, 77 Miss. 912, 28 So. 720 (1900). Section 85-7-7 provides: .
There shall be a hen on all ships, steamboats and other water craft for work done or materials supplied by any person in this state for or concerning the building, repairing, fitting, furnishing, supplying or victualing such ships, steamboats or other water craft, and for the wages of the persons employed on board such vessel, boat, or craft, for work done or services rendered, in preference to all other debts due and owing from the owners thereof. The said lien shall expire six (6) months after the claim is due, unless judicial proceedings have been commenced to assert it.
Miss.Code Ann. § 85-7-7 (Rev. 2011). In Valverde, the Court rejected a workman’s attempt to place a lien on a steam tug where the vessel owner had paid an independent contractor in full to perform repairs, and that independent contractor had failed to pay the workman. Id. at 721. The Court held, specifically interpreting Section 85-7-7:
The sole question here is whether an independent contractor for repairs, having no connection with the vessel for navigation, and no connection as agent of the owner for any purpose, but holding an adversary relation to the owner in respect to the power of contracting debts for the repair of such vessel, has any power to create and fasten a lien upon the vessel in the process of making repairs thereon. Certainly the owner of a vessel by any contract with him would confer a lien for such work or material; and the equity of the statute would extend this lien to debts contracted by an agent of the owner, made within the scope of such agency. But the plea here avers, and the demurrer admits, that Smith, who contracted the debt sued on, was not in any sense the agent of the owner of the steamer Adelaide, in contracting such debts, but as such contractor, held a relation in respect to the owner entirely opposite, in its essential features, to that of being his agent.... and not being the owner, nor the agent of the owner, his contracts gave no lien on the vessel for the debts, nor did they bind the owner therefor.
Valverde, 28 So. at 721 (emphasis added). In essence, following well-established principles still in effect today, the Court held that a repairman must be in privity with the vessel’s owner or such owner’s agent: in order to establish a lien on the vessel under Section 85-7-7, and that privity of contract between the vessel owner and the workman did not exist. Id. Likewise, here, privity between Mike & Jerry’s and Trinity does not exist.[7]
*290 ¶ 8. West Coast, the entity that contracted the debt with Mike & Jerry’s, was not the owner or agent of the vessel. Seizure under this lien statute was therefore not an available mechanism for relief for Mike & Jerry’s. Privity cannot be created merely by an owner’s knowledge or even specification of the identity of the supplier the independent contractor will use. Nor can privity be created retroactively by a subsequent promise by the owner to pay. Something more is required, and that something is simply not present in this case.
¶ 9. Declining to require privity would leave us with a statute that does not require notice or privity prior to seizing another’s property. The absence of a notice requirement prior to seizure distinguishes this statute from stop-notice or mechanic’s lien statutes, and is, in essence, what makes the privity requirement constitutionally necessary. Consider how the absence of privity is compensated for by notice in the context of stop-notice and mechanic’s lien statutes. See Corrugated Indus., Inc. v. Chattanooga Glass Co., 317 So.2d 43 (Miss.1975). In fact, notice requirements are excused where the parties are in common-law privity.[8] The stop-notice and mechanic’s lien statutes are designed to enable recourse where privity between the parties is lacking. But here, the water craft lien statute at hand is not so designed, but rather contemplates privity without notice. It tips to the practicalities of securing grounds for in-rem or quasi-in-rem jurisdiction. This Court got it right 114 years ago when we construed the statute — not merely the underlying facts of Spottswood’s case — to require the existence of privity between the parties in order to establish a lien.[9]
¶ 10. The specification of DuPont paint and Mike & Jerry’s as the paint supplier in the contract between Trinity and West Coast did not establish privity between Trinity and Mike & Jerry’s because it did not confer rights or impose obligations on Mike & Jerry, a party outside the contract. For example, if Mike & Jerry’s had declined to do business with West Coast, Trinity would not have privity on the grounds of that contract to sue Mike & Jerry’s for failing to fulfill the specifications of Trinity’s contract with West Coast.
¶ 11. Mike & Jerry’s further argues that a lien arose in its favor against Trinity when Trinity withheld payments due West Coast for the purpose of paying Mike & Jerry’s directly. “But privity with the owner, within the meaning of the lien statute, exists only when the creditor, in furnishing the materials or performing the labor, has acted on the owner’s obligation, express or implied, to pay therefor as a primary debtor.” Harper Lumber & Mfg. Co. v. Teate, 98 Fla. 1055, 125 So. 21, 23 (Fla.1929). Trinity entered into the purported agreement to reduce future West Coast invoices after Mike & Jerry’s provided the supplies to West Coast. “A subsequent promise by the owner to pay for materials previously furnished to the contractor, and upon the contractor’s credit, cannot operate retroactively to create between the owner and materialman a state of privity which did not exist at the time *291 the materials were furnished.” Id. at 24. The amendment to the Master Service Agreement between Trinity and Mike & Jerry’s did not operate retroactively to create privity between Trinity and Mike & Jerry’s sufficient to create a lien in Mike & Jerry’s favor.
¶ 12. Mike & Jerry’s argues that this case is factually distinct from Valverde in that, in Valverde, the owner had fully paid the independent contractor, while, here, Trinity allegedly had not paid West Coast the money West Coast would have used to pay its debt to Mike & Jerry’s. But this factual distinction does not eliminate or satisfy the privity requirement. Regardless of the state of invoices between Mike & Jerry’s and West Coast and West Coast and Trinity, the direct relationship between Mike & Jerry’s and Trinity is still lacking.
¶ 13. The dissent argues that the Agreed Orders that dismissed the liens and ordered that the amount in controversy be paid into the court’s registry permitted Mike & Jerry’s to assert claims to the money beyond their original lien claim. We cannot agree. The trial court’s order extinguishing the liens with prejudice was not intended to, nor did it have the effect of, converting the cause of action to a general claim against the money by any interested party after notice. In fact, it is illogical that Trinity would have voluntarily subjected itself to claims outside Mike & Jerry’s petition. In the Agreed Orders, the trial court ordered “any claim, right, action, or lien Mike & Jerry’s may have to or against [the vessels] dismissed with prejudice, the same [claim, right, action or lien] being allowed to continue, in rem, against [the money] deposited with the Registry of the Court.” Because the trial court ordered the extant causes of action to continue, and merely substituted the in rem object of the claim, the subject matter of Mike & Jerry’s claims was not altered. Rather, the effect of extinguishing the liens on the yachts was to enable the delivery of the yachts to the ultimate purchasers free from Mike & Jerry’s claim on the physical vessel.
¶ 14. All parties intended that ultimate disposition of the money (now represented by a letter of undertaking) was entirely contingent on the merits of the lien and seizure that originated the action. This is evidenced by Trinity’s challenge to the lien and seizure via a Summary Judgment Motion after the yachts were freed for delivery. With respect to the dissent’s position, a holding that the agreed orders transformed the cause of action into claims outside the petition would raise serious due-process concerns. Under the trial court’s order, and by mutual consent of the parties, the money represents, and is contingent upon, the merits of Mike & Jerry’s seizure of the yachts under the lien statute.[10]
¶ 15. Finally, we reject the dissent’s position that unjust enrichment is a valid ground for relief against Trinity. Mike & Jerry’s never asserted an unjust-enrichment claim. We observe that the underlying litigation is currently active against the party who contracted the debt with Mike & Jerry’s — West Coast — and that West Coast has legal mechanisms available to hold Trinity accountable for any unpaid debts as the litigation unfolds.
*292 ¶ 16. Trinity argues that, as applied in this case, Section 85-7-31 is unconstitutional. But because Mike & Jerry’s has no lien, we see no need to discuss that issue in this case.
CONCLUSION
¶ 17. Unfortunately, Mississippi’s Water Craft Seizure Act was not the appropriate legal mechanism for Mike & Jerry’s to recover the debt it is due. Mike & Jerry’s was not in privity with the owner of the yachts at the time it provided West Coast, an independent contractor, the paint and faring supplies. The trial court appropriately granted summary judgment to Trinity on the grounds brought forward in this particular appeal. Our opinion is not a comment on the ultimate responsibility of parties to make right their debts. We affirm the trial court’s grant of summary judgment. We dismiss the interlocutory appeal challenging the constitutionality of the lien-enforcement statute.
¶ 18. AFFIRMED.
WALLER, C.J., KITCHENS, PIERCE AND KING, JJ., CONCUR. DICKINSON, P.J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY CHANDLER AND PIERCE, JJ.; WALLER, C.J., JOINS IN PART. RANDOLPH, P.J. DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY COLEMAN, J.; LAMAR, J., JOINS IN PART. COLEMAN, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, P.J., AND LAMAR, J.

. The dissents would find that the lien statute does not require notice or privity prior to seizure of personal property. Such a construction would clearly make the statute unconstitutional, as evidenced by the strict notice requirements associated with stop-notice and mechanic’s lien statutes — requirements that exist for the purpose of compensating for lack of privity.

. The yachts were M/Y Lady Linda, valued at approximately $42,000,000, and M/Y Areti, valued at approximately $62,000,000.

. This ostensibly was due to Trinity’s failure to pay West Coast.

. Trinity continued construction and sea trials on the yachts. When the yachts were completed, Trinity deposited the amount of the liens with the Circuit Court so that it could deliver the yachts to the purchasers free of liens. Upon grant of summary judgment to Trinity, the funds were released back to Trinity in exchange for a letter of undertaking in favor of Mike & Jerry’s pending the outcome of this litigation.

. This agreement to reduce the invoices was pursuant to the Master Service Agreement of the construction contract, which provided:
(b) In the event any liens or other Claims are filed in violation of this Section, Trinity will have the right to set off against any amounts then due and owing or which may subsequently become due and owing to Contractor.

. Mike & Jerry's also attempted to add Trinity as a direct defendant, which was denied.

. The facts of Valverde are not distinguishable in any way that affects the definition and application of the doctrine of privity.

. Aetna Cas. and Sur. Co. v. Buck, 594 So.2d 280 (Fla.1992); Clark Lumber Co. v. Passig, 184 Kan. 667, 339 P.2d 280, 282 (1959); McCleskey v. Finney, 272 Ala. 194, 130 So.2d 183, 185 (1961).

. We reject the dissent’s suggestion that Mike & Jerry's petition be considered under the stop-notice statute. Not only did Mike & Jerry’s fail to assert a lien under that statute; that statute has been repealed following the Fifth Circuit’s determination that it was unconstitutional. See Noatex v. King Const. of Houston, L.L.C., 732 F.3d 479, 485-486 (5th Cir.2013).

. The fact that the agreed orders allowed the suit to continue against money paid into the court’s registry while dismissing the liens so that the yachts could be delivered parallels the procedure in Section 85-7-47. That statute permits a defendant, whose property has been seized under Section 85-7-31, to give a bond and replevy the seized property, with the bond to be awarded to 'the person "in whose favor judgment may be given in the case.”