RANDOLPH, Presiding Justice,
dissenting:
¶ 23. Four glaring errors were committed by the trial court in granting summary judgment in favor of Trinity and denying Mike & Jerry’s motion to amend its complaint to add Trinity as a defendant. The trial court failed to distinguish the present case from Valverde v. Spottswood, 77 Miss. 912, 28 So. 720, 721 (1900). The facts presented in Valverde are so markedly distinguishable as to provide no support for Trinity’s argument, the trial court’s grant of summary judgment, or the majority’s affirmance. Second, Section 85-7-7 of the' Mississippi Code[4] does not require *296 that there be a contract or privity to establish or enforce a lien. The plain language of the statute provides a mandatory lien for any person who performs work on or supplies material to a water craft. Third, the trial court ignored its own May 4, 2012, Agreed Order which released and dismissed Mike <& Jerry’s hens on the two yachts, placing in their stead an amount of money equal to Mike & Jerry’s claim. The suit then became one to obtain a judgment against the money deposited by Trinity into the court’s registry. When the lien statutes are read together, as written, it is clear that Mike & Jerry’s is entitled to pursue its claim for judgment. Finally, based on the contracts involved in this dispute, Trinity assumed the contractual obligation to pay Mike & Jerry’s when it withheld money due and owing to West Coast. Trinity has never paid Mike & Jerry’s or West Coast for the paint used •on the two yachts and, thus, was unjustly enriched. Each error will be discussed more fully below. A fuller recitation of the facts and procedural history assists in this analysis.
A. Factual Background and Procedural History
¶24. Trinity contracted with Douglas Von Allmen to build a custom, 183-foot, tri-deck motor-yacht[5] with a price tag of $42,000,000, and with Areti, Ltd., to complete construction[6] of another yacht,[7] 197 feet, 11 inches long, with a price tag of $62,000,000. The contracts specified that the paint would be supplied by Mike & Jerry’s, an authorized DuPont jobber[8] for the New Orleans/Mississippi Gulf Coast marketplace, and applied by West Coast. Not only was the specific brand of marine finishes (DuPont) specified, but the distributor (Mike & Jerry’s) was specified as well.
¶ 25. Pursuant to the contract for M/Y Areti (Hull No. T043), Trinity was responsible for furnishing all materials and constructing and painting the yacht. Attached to that contract was another contract entitled MASTER SERVICE AGREEMENT (MSA), which reads in pertinent part:
The Contractor [West Coast] agrees to pay promptly, and to see that any subcontractor pays promptly, all bills for labor, material, or other Work in furtherance of the Agreement and to permit no liens of any kind to be fixed upon or against the property of the Company [Trinity] or any third party because of or arising out of the Work.
Also attached to the contract was a NO LIEN CERTIFICATE which required that all invoices for materials furnished to Trinity for the building of the yacht be paid prior to the date of delivery, such that there would be no encumbrances on the vessel.
¶26. Pursuant to the agreement between Douglas Von Allmen and Trinity for the construction of M/Y My Lady Linda (Hull No. T050), Trinity agreed to furnish all labor and materials required to complete the yacht in accordance with the *297 plans and specifications. The agreement also provided that a “no-lien” affidavit be delivered on completion of the yacht, stating that “all invoices for materials, equipment and supplies furnished by the Builder [Trinity] to the Yacht have been paid in full and that all laborers, craftsmen, and subcontractors ... have been paid in full....” Attached to this agreement was a similar MSA, which, in pertinent part, reads:
The Contractor agrees to pay promptly, and to see that any Sub-Contractor pays promptly, all bills for labor, material, or other Work in furtherance of the Agreement and to permit no liens of any kind to be fixed upon or against the property of the Company or any third party because of or arising out of the Work.
¶ 27. West Coast was selected by Trinity to apply the marine finishes, per the specifications, to the yachts. Pursuant to the MSA between Trinity and West Coast, Trinity contractually had the authority to withhold funds to pay Mike & Jerry’s if West Coast failed to pay. Ultimately, Trinity withheld funds from West Coast equal to Mike & Jerry’s claims and later paid the claimed amount into the court’s registry.
¶28. Other than Trinity’s selection of West Coast to apply the marine finishes, DuPont controlled all aspects of painting the yachts — from the distributor supplying the marine finishes to the minute details of painting the yachts. DuPont submitted more than thirty pages of specifications for paint and fairings to Trinity. Page twenty-one of the specifications identified not only the business entities, but also the persons by name and position — specifying Mike & Jerry’s and its principal, Glen Bohte, as the distributor, along with six of DuPont’s advisory representatives who were to be on site from start to finish.
¶29. On December 2, 2011, Mike & Jerry’s filed its Petition to Establish and Enforce Water Craft Liens, setting forth its claims that it was owed $236,841.01[9] for products it supplied[10] to paint the yachts when they were under construction and owned by Trinity.[11] On December 8, 2011, it filed a motion for writ of seizure,[12] re *298 questing that the sheriff seize the two yachts. On December 12, 2011, the court issued the Writ of Seizure, and a hearing was set for December 15, 2011. A copy of the writ was attached to each vessel, but the summons could not be served on a person, as the owner of Trinity was out of the country and had directed that no Trinity employee accept service of the summons.
¶ 30. Once Trinity had knowledge of Mike & Jerry’s unpaid claim, Trinity and West Coast began negotiations for Trinity to withhold money it owed West Coast and Trinity would pay Mike & Jerry’s directly. Trinity withheld an amount from West Coast equal to its debt due West Coast in the amount of Mike & Jerry’s claim, yet it failed to pay the withheld money to Mike & Jerry’s. Ultimately, Trinity paid neither West Coast nor Mike & Jerry’s for the paint, despite the purchasers/owners having paid for the yachts painted per the specifications and plans.
¶ 31. No appearance was made directly on behalf of the yachts or purchasers/owners. It was not until April 12, 2012, that Trinity made an appearance by filing a motion to dismiss Mike & Jerry’s petition. Trinity claimed Valverde prevented Mike & Jerry’s from establishing liens and contested the constitutionality of the lien statute. Trinity also asserted, inter alia, in its Motion to Dismiss, that the rights of unpaid suppliers were limited to Mississippi Code Section 85-7-181 and that Mike & Jerry’s did not comply with the statute’s requirements. This motion was denied by the trial court. On the same day, Trinity filed an Emergency Motion for Expedited Hearing, alleging that one of its yachts was scheduled for delivery to the purchasers/owner on or about April 25, 2012.
¶ 32. On May 4, 2012, on the joint ore tenus motion of Trinity and Mike & Jerry’s, the court entered an Agreed Order dismissing with prejudice “any claim, right, action, or lien Mike & Jerry’s may have to or against Hull T043,” but allowing Mike & Jerry’s to continue its proceeding against $136,971.67, which was deposited by Trinity into the registry of the court. The court made the following findings: (1) Hull T043 was scheduled for delivery at a uncertain date in the near future; (2) Trinity had moved to dismiss the action (which the Court denied), to extinguish the liens (the Agreed Order extinguished the lien), and to recover the seized property (the Agreed Order allowed Trinity to recover Hull T043); (3) the parties agreed to “substitute any claim, right, action, or lien Mike & Jerry’s may have to or against Hull T043, replacing in its stead the sum of ... $136,971.67, to be paid by Trinity Yachts ... and paid into the Registry of the Court;” and, of great import; (4) Mike & Jerry’s agreed to release “any claim, right, action, or lien” it may have had against Hull T043. Thus, Mike & Jerry’s was allowed to preserve its right to pursue its remedy against the money placed in the court registry to “be tried as other cases in the court,” after giving notice to all interested parties.[13] See Miss.Code Ann. §§ 85-7-31[14] and 85-7-49.[15] On May 7, *299 2012, Trinity paid the sum into the registry of the court. On June 4, 2012, Trinity paid an additional $149,663.43 into the registry of the court for Hull T050.[16] Although Trinity paid these amounts into the registry of the court, it, in fact, already had withheld the monies from West Coast once it was made aware of the disputed claims.
¶ 33. Although the liens against the vessels had been released by Mike & Jerry’s and dismissed with prejudice by the court, Trinity then filed a Motion for Summary Judgment on November 13, 2012, arguing that, because no privity or contractual relationship existed between Trinity and Mike & Jerry’s, the vessels had been improperly seized, and the liens asserted by Mike & Jerry’s were not proper, ergo, Mike & Jerry’s was not entitled to recover the money or maintain an action against Trinity. Mike & Jerry’s subsequently filed a Motion for Leave to File a Second Amended Complaint, adding both Trinity and West Coast as defendants to its suit.
¶ 34. The trial court heard arguments on both motions. During the hearing, the trial court stated that, “I find that the statute [85-7-7] per se does not require the privity of contract between the parties. Seeing no contractual relationship and the ... nonexistence of an agency relationship, the motion for summary judgment is granted.” On June 11, 2013, the trial court denied Mike & Jerry’s motion to add Trinity as a defendant “on the grounds of futility, because no contract or privity existed between Mike & Jerry’s and Trinity, nor did Mike & Jerry’s properly perfect a lien or claim under Mississippi’s ‘Stop Notice’ statute, Miss.Code Ann. § 85-7-181, and consequently Mike & Jerry’s cannot assert a viable claim against Trinity....” The trial court granted Trinity’s Motion for Summary Judgment and ordered that Trinity’s “security”[17] placed into the court’s registry be returned.[18]
*300 B. Discussion of Errors

1. Valverde v. Spottswood

¶ 35. Trinity argued, and the trial court agreed, that the ruling of Valverde held that a lien could not be created against the vessel or the owner by an independent contractor. After a thorough review of the Valverde record, it is clear that Valverde is so markedly distinguishable from the present case that it provides no support to Trinity’s argument that Mike & Jerry’s should not be allowed to pursue its claim for the marine finishes demanded by the purchasers/owners and builder/owner, which were supplied to and applied to the yachts at Trinity’s behest. Valverde does not require a separate contract or privity with the owner to perfect a hen. The word “privity” is not found in the text of the Valverde opinion.
¶ 36. In Valverde, the owner of the vessel (Spottswood) contracted with George ’ Smith (contractor) to repair his steamer. Valverde, 28 So. at 721. Smith, in turn, hired several laborers to perform repair work on the vessel and asked Val-verde to supply groceries to the vessel during the time the workers repaired the steamer. Spottswood (owner) and Smith (contractor) agreed upon a price for such repairs. Spottswood already had paid Smith the agreed-upon price in full, absent knowledge of the disputed claims. Id. Smith, however, did not pay Valverde the entire amounts owed for the victuals or the laborers. At the time of Spottswood’s payment to Smith, Spottswood was wholly unaware of Valverde’s claim for supplies and the laborers’ claim for work' performed, as those claims were made subsequent to Spottswood’s payment to Smith. Id.
¶ 37. Valverde filed a declaration on March 17, 1898, asserting that, from March 23, 1897, until May 1, 1897, he had sold Smith various and sundry groceries, for which he had not received full payment.[19] Valverde also asserted in his declaration that he had been assigned seven separate claims by laborers who had performed work on the vessel but were not paid in full for their labor. The total amount unpaid was approximately $210.[20]° On the same day, a writ of seizure was filed against the vessel, authorizing the sheriff to seize the vessel.[21] The vessel was returned after Spottswood paid a bond in the amount of $419.50.
¶ 38. On April 25, 1898, Spottswood filed a “Special Plea,” stating that (1) he had contracted with Smith to repair his vessel, (2) the agreed-upon sum of $1,051 was paid in full (unlike today’s case), (3) Smith had no interest in his vessel (unlike builder/owner Trinity), and (4) the contract price was paid long before he knew Smith was incurring debts without his knowledge or approval (unlike today’s case). On April 28, 1898, Valverde demurred Spotts-wood’s Special Plea, stating that Spotts-wood presented no defense and Spotts-wood’s payment to Smith did not operate to discharge the lien. The court overruled the demurrer, and, after Valverde declined *301 to reply or plead further, dismissed the case. Valverde timely appealed.
¶ 39. On appeal, the Court held that Smith was not the agent or owner of the steamer (as was builder owner Trinity) and Smith’s contracts could not bind the owner. Valverde, 28 So. at 721. Valverde and “his assignors knew, or ought to have known, that they were not dealing with the owner of the steamer, or with his agent, and they had no reason to believe that Smith carried with him authority to contract for the owner; (neither of which applies to today’s case, for Mike & Jerry’s and DuPont knew Trinity was the owner, and that either Trinity or its paint contractor had authority to procure paint to fulfill Trinity’s contractual obligation, see FSC Sec. Corp. v. McCormack, 630 So.2d 979, 988 (Miss.1994) (holding that an agent is one who acts under either the express or apparent authority of a principal) and the consequences of their negligence must be borne by them (no issue of negligence was alleged in today’s case)).” Id. The Court affirmed the judgment of the circuit court. Id. The Valverde Court held that, as the facts were presented in that particular case and in the absence of other relevant factors, no lien could be had by the grocer on that particular vessel. The facts of the present case are so dissimilar as to make Valverde inapplicable.
¶ 40. Spottswood exercised no control over the labor or materials used in the ship’s repair. Trinity did as builder/owner. The Valverde Court noted that the owner did not order the specific material that was used to repair his steamer. Val-verde, 28 So. at 721. Conversely, in the present case, both the builder/owner (Trinity) and the purchasers/owners specifically required that DuPont marine finishes be acquired from Mike & Jerry’s and used on the yachts. Trinity was contractually obligated to paint the yachts using DuPont paint distributed by Mike & Jerry’s. Spottswood already had paid Smith the full amount owed for the repairs, without the knowledge that his contractor, Smith, had not yet paid his grocer for supplies or laborers for their work. There was no other “debt due and owing from the owner” to perfect a lien against the vessel. See Miss.Code Ann. § 85-7-7. In today’s case, there was money “due and owing from the owner [Trinity],” as Trinity had not paid, and still has not paid, West Coast or Mike & Jerry’s the amount owed and withheld by Trinity for the marine finishes. Trinity was aware of Mike & Jerry’s claim while West Coast was still applying the finishes to the yachts and withheld money it owed to West Coast equal to the claimed amount. In the present case, Mike & Jerry’s timely asserted a claim against the vessels, pursuant to Section 85-7-7.
¶ 41. Trinity argues that Valverde is the only case addressing the application of Section 85-7-7. However, the case of Kornosky v. Hoyle, 97 Miss. 562, 52 So. 481, 481 (1910), is instructive, as it also involves the owner of the vessel, as does the present case. In Komosky, Hoyle filed a replevin suit against Kornosky (owner) for the balance owing Hoyle for repairs made to Kornosky’s boat. Id. After Kornosky refused to pay Hoyle the amount owed, Hoyle sued out a writ of replevin for the boat. Id. That Court stated that
[t]he court below held that chapter 85, Code of 1906, [now 85-7-7] which gives a lien, and a remedy therefor, on watercraft for work done or materials supplied in building, repairing, and furnishing the same, was appellant’s only remedy for the collection of the amount due him by appellee. In so holding the court erred. At common law the appellant had a possessory lien for work *302 done and materials furnished in repairing the boat, carrying with it the right to hold the same against the owner until his charges were paid.
Id. That Court held that there is “a lien at common law for the building of a ship, if the shipwright has not parted with the possession thereof, ... without paying all that is due for her construction.” Id,. (quoting 19 A. & E. Encyc. Law 1090 (2d ed.)). Chapter 85 of the 1906 Code, like its counterpart Section 85-7-7, “does not abrogate the common-law right. On the other hand, its purpose is to enlarge the same, and give a better remedy, though not exclusive.” The Court held that Hoyle was entitled to one of two remedies: (1) he was entitled to judgment against the owner (Kornosky) for the return of the boat (this is not sought in this case), or (2) he was entitled to the amount of his indebtedness (which is exactly what Mike & Jerry’s presently seeks). Applying the Kornosky reasoning, which is more akin to this case than Valverde, this Court should find that Mike & Jerry’s is entitled to pursue its claim with notice to all interested parties.

2. Mississippi Code Section 85-7-7

¶ 42. Section 85-7-7 of the Mississippi Code reads in pertinent part that “[t]here shall be a lien on all ... water craft for work done or materials supplied ... for or concerning the building ... in preference to all other debts due and owing from the owners.... ” Miss.Code Ann. § 85-7-7 (Rev. 2011). The statute does not include a privity-of-contract requirement. By its plain language, Section 85-7-7 applies to “any person in” Mississippi who worked on or supplied materials to the vessels. “The lien statutes of Mississippi afford an abundance of protection for mechanics and ma-terialmen. But in all cases such persons must take action as a condition precedent to receiving the benefits thereof, and upon their failure so to do their remedies are those of common creditors.” Wortman & Mann, Inc. v. Frierson Bldg. Supply Co., 184 So.2d 857, 860 (Miss.1966) (quoting Jones Supply Company v. Ishee, 249 Miss. 515, 521-22, 163 So.2d 470, 472 (1964)). Mike & Jerry’s timely asserted liens, pursuant to Section 85-7-7, for the paint it supplied for the two luxury yachts under construction by Trinity.
¶ 43. While we can agree that there was no contract between Trinity and Mike & Jerry’s, the contract documents provided for Mike & Jerry’s to supply paint for the yachts. Additionally, Section 85-7-7 does not require a direct contract or privity for a lien to be asserted. The trial court noted as such in his bench opinion— “I find that ^he statute per se does not require the privity of contract between the parties.” However, the trial court mis-stepped when he held, “[s]eeing no contractual relationship and the ... nonexistence of an agency relationship, the motion for summary judgment is granted.”
¶ 44. A lien is an assertion of claims to all interested persons to ensure money is not paid before the claim is resolved and seeks to create a preference to all other debts “due and owing.” The purpose of Section 85-7-7 is to offer protection to laborers, materialmen, and suppliers, a good number of whom would not know whether privy was an outhouse or the sharing of knowledge, nor would they know the difference between privateer and pirate, nor do they have a Philadelphia lawyer (Pennsylvania or Neshoba County practitioner) at their beck and call, nor do they carry around contracts to be signed by owners when delivering materials to a job site.
¶ 45. No requirement of privity is mentioned in Section 85-7-7, Valverde, or Kor-nosky, although the majority uses the word “privity” multiple times in its opinion. After adopting such a requirement *303 and amending the statute, why does the majority fail to consider the alternative argument advanced by Trinity and Mike & Jerry’s? Trinity argued that Mike & Jerry’s improperly filed its action asserting Section 85-7-7 when it should have filed pursuant to Section 85-7-181.[22] Section 85-7-7 is not the exclusive remedy for Mike & Jerry’s. Mike & Jerry’s can seek relief under either Section 85-7-7 or Section 85-7-181. Although I would find that Mike & Jerry’s was entitled to pursue its claim via Section 85-7-7, in the alternative, Mike & Jerry’s was equally entitled to pursue its claim under Section 85-7-181. The trial court improperly held that Mike & Jerry’s did not provide notice to Trinity in accordance with that section. Filing a lien pursuant to Section 85-7-7 provides more than sufficient notice to Trinity regarding its claim. Sections 85-7-7 and 85-7-181 were designed to protect materi-almen and to ensure that they would be paid for products sold. They are for the benefit of materialmen, and every materi-alman does not have to carry a book of contracts for the owners’ execution every time he delivers a two-by-four, can of paint, or plumbing fixture to a project. Mike & Jerry’s is such a materialman.

3. May 4, 2012, Agreed Order

¶ 46. As stated above, Mike & Jerry’s properly filed its petition pursuant to Mississippi Code Section 85-7-7, asserting liens in preference of any other interested party. See Miss.Code Ann. § 85-7-31. The central issue was whether Mike & Jerry’s, or any other interested party, was entitled to the remedies provided under Mississippi Code Section 85-7-49.
¶ 47. At the conclusion of the hearing on Trinity’s motion for summary judgment and Mike & Jerry’s motion to amend its complaint, there were no liens on either vessel, for Mike & Jerry’s had released those liens and the trial court had dismissed the liens against the vessels with prejudice. Trinity should have been judicially estopped from being heard on a motion concerning liens that already had been released and dismissed. The trial court conflated the issues of validity of a lien vel non with whether Mike & Jerry’s demand for monetary judgment was valid. Perhaps this explains the flawed reasoning behind the trial court’s Order and Final Judgment entered on June 11, 2013, when the trial court denied Mike & Jerry’s motion to add Trinity as a defendant.
¶ 48. The liens against the vessels were released by agreement of the parties and order of the court. Upon release of the liens, neither the constitutionality of the water craft seizure statute nor the validity of the liens was to be adjudicated.[23] The actions against the vessels were dismissed with prejudice.[24] The “subject-matter of the suit” had changed from asserting liens and obtaining a monetary judgment, to only obtaining a remedy, i.e., a monetary judgment.[25] Mike & Jerry’s remaining *304 claim was against the money Trinity withheld from West Coast and paid into the court.
¶ 49. In one fell swoop, the trial court dismissed Trinity, an interested party, and gave Trinity the money deposited into the court, contrary to its earlier order which allowed for Mike & Jerry’s to proceed on its claims against the money after releasing its liens and claims against the vessels. The trial court’s order foreclosed Mike & Jerry’s opportunity, and that of another interested party (West Coast), to present their claims and/or defenses to the money in the registry of the court. Although the liens were dismissed with prejudice, the money substituted therefore was still at issue and was improperly released by the trial court.[26] Again, the trial court conflated two issues. Whether there is a right to assert a lien does not control whether there is a valid claim.

4. Contractual Obligation

¶50. Finally, Mike & Jerry’s argued that Trinity had a contractual obligation to pay West Coast per their agreement. Trinity, in fact, withheld money it owed to West Coast for the very paint at issue. Trinity never paid West Coast the total amount it owed it, and Trinity refused to pay Mike & Jerry’s the money withheld. In fact, Trinity failed to disclose that fact to Mike & Jerry’s or the court until late in the proceedings.
¶ 51. Pursuant to the MSA prepared and signed by Trinity, Trinity assumed the obligation to pay .Mike & Jerry’s when it withheld the money it owed to West Coast once it learned that Mike & Jerry’s had not been paid the full amount for the finishing products. The MSA specifically provided Trinity with “the right to set off against any amounts” owing to West Coast if “any liens or other claims are filed” based on West Coast not paying Mike & Jerry’s or any other contractor. This contractual right of set-off was exercised by Trinity for Mike & Jerry’s benefit.

C. Conclusion

¶ 52. Based on these facts and analogous lien statutés, I cannot agree that summary judgment was properly granted in favor of Trinity. Although Trinity had been paid, it pocketed the disputed amount, leaving both West Coast, and the supplier, Mike & Jerry’s, unpaid.
¶53. The trial court improperly held that a contract or privity between the parties must exist in order for a Section 85-7-7 lien to be created. Our statutes provide for no such requirement. Mike & Jerry’s should be allowed to pursue recovery “against all interested parties” for the amount owed for the materials. I submit that summary judgment was not properly granted in favor of Trinity, for the reasons stated herein. Accordingly, I dissent.
¶ 54. The proper disposition would be to reverse the trial court’s denial of Mike & Jerry’s motion to add Trinity as a party and the grant of summary judgment in favor of Trinity. This case should be remanded for proceedings consistent with this opinion, allowing all interested parties (Trinity, Mike & Jerry’s, and West Coast) an opportunity to put forth proof or contest any demands thereof, regarding whether they are entitled to all or any portion of the disputed amount. The question for the trial court to decide is which interested party is entitled to judgment.
COLEMAN, J., JOINS THIS OPINION. LAMAR, J., JOINS THIS OPINION IN PART.

. "There shall be a lien on ail ships, steamboats and other water craft for work done or materials supplied by any person in this state for or concerning the building, repairing, fitting, furnishing, supplying or victualing such ships, steamboats or other water craft, and for the wages of the persons employed on board such vessel, boat, or craft, for work *296 done or services rendered, in preference to all other debts due and owing from the owners thereof. The said lien shall expire six (6) months after the claim is due, unless judicial proceedings have been commenced to assert it." Miss.Code Ann. § 85-7-7 (Rev. 2011).

.Also referred to as Hull No. T050, M/Y Lady Linda.

. Trinity warranted that the yacht was approximately seventy percent complete.

. Also referred to as Hull No. T043, M/Y Are-ti.

. DuPont does not sell paint directly to builders, but instead uses distributors (jobbers), such as Mike & Jerry’s.

. Mike & Jerry’s supplied $236,562.16 in paint. It was paid only $221.15 of its bill.

. Justice Dickinson’s separate opinion states "there was no ‘work done or materials supplied’ to the vessels by Mike & Jerry’s.” (Dickinson Opinion at ¶ 21). There is no basis for this statement in the record. Mike & Jerry’s testified by sworn affidavit that it supplied paint to West Coast in Harrison County. Additionally, Justice Dickinson is seeking to further expand Section 85-7-7 by stating that the statute calls for materials to be provided directly "to the vessel.” Once again, there is no basis for this argument. The statute specifically states that ”[t]here shall be a lien on ■ all ships, steamboats and other water craft for work done or materials supplied by any person in this state for or concerning the building, repairing, fitting, furnishing, supplying or victualing such ships, steamboats or other water craft...." Miss.Code Ann. § 85-7-7 (Rev. 2011) (emphasis added).

. Trinity was the builder/owner of the vessels until title passed to the purchase/owners. Ownership of the yachts did not pass to the purchasers/owners until construction of the yachts was substantially completed, sea trials were successfully completed, and title passed upon the receipt of the final payment.

. The majority conflates the concepts of lien law and seizure law. Lien law does not require that notice be given prior to attaching a lien. The actual lien is the notice. However, seizure law does require that notice be given to the owner of the property prior to seizing the property. See Miss. Power Co. v. Goudy, 459 So.2d 257, 282 (Miss.1984) ("In a replev-in case, ... the debtor has sufficient rights in the property that due process requires reasonable advance notice and opportunity to be heard prior to seizure.”) (citing Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972)). See Maj. Op. at ¶ 1, n. 1, ¶ 3, ¶ 15. One only has to look at Para *298 graph 3 of the majority’s opinion, where it recognizes that notice prior to the seizure was in effect. Notice has nothing to do with privity. The absence of notice does not exist in this case. The majority further states that the privity requirement is “constitutionally necessary.” Maj. Op. at ¶ 9. This statement is made without authority or citation.

. Trinity already had notice of the claim, and the Court subsequently allowed West Coast to be added as an interested party.

. "A person having any lien in Sections 85-7-1 through 85-7-9 may enforce the same by making affidavit before any officer authorized to administer oaths of any county where the subject matter of the lien may be, describing *299 therein the property sought to be subjected, setting forth his claim, share or interest therein, and asserting his lien thereon, with an itemized account of his demand, and giving the names of the persons interested therein, and of those, if any, who have a like or other claim or interest in such property; whereupon the clerk or justice shall issue a writ directed to the proper officer and returnable to the proper court, commanding the officer to seize the property, or so much thereof as may be necessary to satisfy the plaintiff’s demand and costs, and to summon the persons named in the affidavit as interested therein, to appear in the court designated, at the time fixed, to answer the complaint.” Miss.Code Ann. § 85-7-31 (Rev. 2011).

.“Any person interested may contest the demand of the plaintiff ... by filing a statement in writing, under oath, of his defense or claim, itemizing his account, if any he has; and the case shall be then at issue between the parties, and shall be tried as other cases in the court. And the judgment of the court shall be framed so as to adjust the rights of the several parties as to the subject matter of the suit; and judgment may be given against the party liable thereto for any amount, and for the sale of any goods in the hands of the officer, and for any balance not obtained from the sale of the goods, to be made by execution as in other cases, and the costs may be adjudged as the court may consider just; and as many judgments shall be rendered as may be necessary to adjust the rights of the several parties.” Miss.Code Ann. § 85-7-49 (Rev. 2011) (emphasis added).

. The June 4, 2012, Agreed Order was not made part of the record on appeal.

. The trial court’s use of the term "security" is misplaced. Mike & Jerry’s agreed with Trinity’s substitution of the money in the stead of the liens on the vessels and gave up its right to pursue "any, claim, right, action, or lien” against the vessels in exchange for the right to proceed on its claims against the substituted property, i.e., the money.

. The trial court did properly grant Mike & Jerry’s motion to amend its complaint to add West Coast as a defendant.

. The case did not address that Valverde’s declaration was untimely filed, as it was more than six months after the payment was due. See Miss.Code Ann. § 85-7-7.

. There is a discrepancy in the record as to whether the amount owed was $209.50 or $210.15.

.Although the record is unclear about certain dates, it is clear that the vessel was seized only after (1) all the work had been performed, (2) groceries had been delivered by Valverde, and (3) the ship had left and later returned to Mississippi. In the present case, the lien was filed while the yachts were still under construction at the builder/owner's (Trinity’s) yard.

. This section was repealed on April 11, 2014. However, at the time this litigation commenced, this applicable statute was in effect and its constitutionality is not the subject of the appeal in this case.

. Therefore, it is not necessary to address the constitutionality of the Water Craft Seizure Act.

. Trinity concedes as much, for when it made an appearance as an interested party, it responded to Mike & Jerry’s petition "pursuant to Section 85-7-49 of the Mississippi Code, and contested the demand of ... Mike & Jerry’s....”

.The majority states that the disposition of the money was "entirely contingent” on the merits of the lien and seizure. Maj. Op. at ¶ 14. However, once the liens were released and dismissed, the disposition of the money was contingent on the merits of Mike & Jerry’s claim for a monetary judgment.

. Trinity understood that it might have continued exposure based on the outcome of a trial and submitted a letter of undertaking in favor of Mike & Jerry’s pending the outcome of this litigation.